IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW HAWKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:25-cv-00652-D-BT |
| | § | |
| DESOTO INDEPENDENT | § | |
| SCHOOL DISTRICT, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are separate Motions to Dismiss filed by Defendant Desoto Independent School District (ECF No. 27) and Defendants Dr. Usamah Rodgers, Jasen Campbell, Jocelyn Starling, Kristi Primus, Dr. Leon Darden, Gene Morrow, Jorge Medina, Christopher Polk, Alicia Bailey, and Alma Murphy-Goss (ECF No. 26). The District Judge referred these Motions to the undersigned for a recommendation under 28 U.S.C. § 636(b)(1)(B). *See* Order of Reference (ECF No. 28). As explained below, the District Judge should GRANT Defendants' Motions to Dismiss.

## Background

As alleged in the live pleading, Plaintiff Matthew Hawkins, is a Black, male educator currently employed by DeSoto ISD, where he has taught high school mathematics since 2016. Am. Compl. 2–3, ¶ 4 (ECF No. 13). From 2021–2023,

Plaintiff taught Algebra II at DeSoto High School, where the student body is "over 75 % Black and 100 % Title I [i.e., economically disadvantaged]." *Id.* at 2. Plaintiff has a reputation for "rigorous instruction, integrity-based grading, and consistent enforcement of District Rules." *Id.* ¶ 7. And during the 2022–2023 school year, "his Texas Teacher Evaluation and Support (T-TESS) scores were "among the highest in the district," he was nominated for "Teacher of the Year," and he was recognized as a "High-Flying Eagle" for his "stellar performance" and "unwavering commitment to academic integrity." *Id.* ¶ 10. In 2023, however, Plaintiff experienced a conflict with then-Assistant Principal Jocelyn Starling after Plaintiff reported Starling's "non-enforcement" of discipline referrals to the then-Principal. *See id.* ¶ 13.

At the end of the school year, Plaintiff was transferred to the Early College High School (ECHS) to teach math. *Id.* ¶ 14. According to Plaintiff, "ECHS is not a mere 'program' inside [DeSoto High School]" but is "operationally and administratively separate," with its own leadership, "specialized professional development, and TEAMS/HR." *See id.* ¶ 98. And the then-Principal of ECHS believed Plaintiff was the ideal teacher for ECHS students who allegedly "struggled with discipline and accountability" because of "[Plaintiff's] reputation for enforcing strict policies (dress code, IDs, attendance) and maintaining high instructional rigor." *Id.* ¶ 9.

Around that same time, Starling was promoted to a "direct supervisory role over [Plaintiff]," and Plaintiff's "two strongest administrative advocates" left DeSoto ISD. *Id.* ¶¶ 14, 15.

No sooner than he arrived at ECHS, Starling began subjecting Plaintiff to "heightened scrutiny" and "retaliatory treatment" based on their past "friction." *See id.* ¶ 15. First, Starling questioned Plaintiff's practice of limiting calculator use in his class, criticizing it as "an unnecessary hardship." *Id.* ¶¶ 23–24. Then, Plaintiff and Starling clashed over attendance policies, *id.* ¶¶ 26–27, 29–30, and lesson planning requirements, *id.* ¶ 34. Plaintiff refused to submit "PowerPoint driven lesson plans" because his lesson plans followed "the District's template," and because he believed Starling's preferred format violated the Texas Education Code. *See id.* ¶¶ 34–35, 41. Plaintiff met with Starling and Assistant Principal Kristi Primus about the dispute, and on November 28, 2023, Starling issued a "Formal Letter of Concern," "accusing [Plaintiff] of failing to comply with the 'official directive' mandating submission of lesson plans." *See id.* ¶ 38, Ex. 11, Formal Letter Concern (ECF No. 13-11). Plaintiff refused to sign the Letter, asserting that he was being "singled out," and that "other teachers who never submitted such slides apparently faced no similar discipline." *Id.* ¶ 39.

In early 2024, Plaintiff objected to the use of "NSolve," an automated solving function in student issued calculators. *Id.* ¶ 43. Although Plaintiff was told that "the district verified NSolve would be allowed," Plaintiff continued to disable NSolve on calculators in his classroom and refused to allow students to use the

feature. *See id.* ¶¶ 43–44. Plaintiff alleges that this led students in his class to "openly resent [him] for demanding 'harder' math practice." *Id.* ¶ 45 (cleaned up). Additionally, in February 2024, Defendant Alicia Bailey, a DeSoto ISD instructional coach, entered Plaintiff's classroom "mid-lesson," insisting that he teach with calculators which "undermined him in front of students." *Id.* 4, ¶ 46. And a few days later, Bailey accused Plaintiff of "hurting" his students and raised her voice at him during a staff meeting. *Id.* ¶ 46.

On February 27, 2024, ECHS administrators assigned a different teacher to take over "instruction" for Plaintiff's 1st, 2nd, and 4th period Algebra I classes while Plaintiff remained responsible for "aggressive monitoring, group and individualized instruction, and all other tasks (attendance, grades, maintaining classroom discipline etc[.])." *id.* at Ex. 12, Instructional Plan Email (ECF No. 13-12); *see also id.* ¶ 49. Plaintiff continued to teach his Algebra II classes. *See id.* at Ex. 12, Instructional Plan Email.

On March 6, 2024, Principal Jasen Campbell placed Plaintiff on a 4-week "Teacher in Need of Assistance ('TINA') plan" based on Campbell's observation that Plaintiff was not implementing "the elements of the lesson cycle" in his instruction. *See id.* ¶ 60; *id.* Ex. 13, TINA email (ECF No. 13-13); *id.* at Ex. 14, TINA plan (ECF No. 13-14). Plaintiff alleges that he received no notice of "alleged instructional issues" and suggests the TINA plan was retaliation for his prior objections. *Id.* ¶ 60. Two days later, Plaintiff filed a "Level I grievance," "challenging: (i) the lesson-plan requirements; (ii) the Formal Letter of Concern;

4

(iii) assignment of another teacher to instruct Plaintiff's Algebra I class; and (iv) the TINA plan." *Id.* ¶ 71. The same day, Plaintiff was told to "resume teaching" his Algebra I classes. *Id.* ¶ 53. And, on March 26, 2024, Plaintiff's TINA plan was "discontinue[d]." *See id.* ¶ 68; *id.* at Ex. 13, TINA Email (ECF No. 13-13).

On March 28, 2024, Plaintiff had his Level I grievance hearing with Principal Campbell, Am. Compl. ¶ 72 (ECF No. 13), and on April 8, 2024, Campbell issued his written decision, removing the "Letter of Concern" from Plaintiff's file and deciding that the instructional reassignment of Plaintiff's Algebra I classes "should not have occurred." *Id.* ¶ 74; *id.* at Ex. 17, Level I Decision (ECF No. 13-17). Despite the decision, Plaintiff asserts that Defendant's conduct had "artificially depressed [Plaintiff's]" T-TESS Scores, Student Growth, and Student Experience Surveys for that year. *See id.* ¶¶ 80–81. As a result, Plaintiff alleges that he lost his eligibility for Texas Teacher Incentive Allotments (TIA), a state-funded financial incentive program for high-performing teachers. *See id.* ¶ 81.

For the 2024–2025 school year, Plaintiff was reassigned from Algebra I to Geometry at ECHS, "categorically barr[ing]" him from TIA eligibility—allegedly because Geometry, as a non-STAAR subject, is not eligible for TIA. *See id.* ¶¶ 89–91. Shortly after the school year started, Plaintiff assigned zeroes to "students caught cheating on the Chapter 1 Test." *See id.* ¶ 97. And the next day, on August 30, 2024, Plaintiff was removed from ECHS and reassigned to "regular Algebra II at the main DeSoto High School" following "an overwhelming number of

complaints." *Id.* ¶ 98. Plaintiff asserts that he "received no formal notice of the alleged complaints and was never allowed to rebut them." *Id.* ¶ 99.

On September 9, 2024, Plaintiff filed a Level I grievance challenging his reassignment "from ECHS Honors Algebra II/Geometry." *Id.* ¶ 110; *id.* Ex. 23 at Page ID 643–645, Level I Grievance, Sep. 9, 2024 (ECF No. 13-23). On September 20, 2024, Defendant Dr. Leon Darden, director of ECHS, presided over a hearing on Plaintiff's grievance, *See* Am. Compl. ¶ 111 (ECF No. 13), and following the hearing, denied Plaintiff's grievance "in its entirety." *See id.* Ex. 23 at Page ID 640– 641, Level I Grievance Decision, Oct. 14, 2024 (ECF No. 13-23).

Plaintiff appealed that decision through a Level II grievance. *See* Am. Compl. ¶ 121. Defendant Gene Morrow Jr., the Level II hearing officer, upheld Dr. Darden's determination. *See id.* ¶ 123; *id.* Ex. 23 at PageID 636–637 (ECF No. 13-23).

Following the Level II denial, Plaintiff filed a Level III Grievance to the DeSoto ISD Board of Trustees, and, on February 24, 2025, a Level III hearing was held. *See* Am. Compl. ¶ 224. The Board reached a "tie" vote, "effectively upholding the Level II denial." *Id.* ¶ 264. Plaintiff alleges, however, that the Level III hearing was unfair and that the rationale for his reassignment was unsupported by the record. *Id.* ¶¶ 225–235.

Meanwhile, on December 12, 2024, Plaintiff "filed a Charge of Discrimination with the Equal Employment Opportunity Commission ('EEOC') and the Texas Workforce Commission Civil Rights Division." *Id.* ¶ 258. Plaintiff

asserts that the "EEOC issued a Notice of Right to Sue" on February 26, 2025. *Id.* ¶ 259.

Plaintiff, proceeding pro se, paid the filing fee and filed this lawsuit on March 18, 2025, asserting numerous federal and state constitutional and statutory claims and state-law contract and tort claims against DeSoto ISD and various individual defendants. *See generally* Original Compl. (ECF No. 3). When DeSoto ISD and the individual defendants moved to dismiss, *see* Mots. (ECF Nos. 10, 11), Plaintiff filed his First Amended Complaint (ECF No. 13), which is the live pleading.

Plaintiff's Amended Complaint—which spans 126 pages, comprised of 681 separately numbered paragraphs (most of which contain multiple, unnumbered sub-parts), and includes 55 separate exhibits (which span another 228 pages)— asserts 21 Counts against DeSoto ISD and ten DeSoto employees: (1) Dr. Usamah Rogers, (2) Jasen Campbell, (3) Jocelyn Starling, (4) Kristi Primus, (5) Dr. Leon Darden, (6) Gene Morrow, (7) Jorge Medina, (8) Christopher Polk, (9) Alicia Bailey and (10) Alma Murphey-Goss in their official and individual capacities. *See generally*, Am. Compl.[1]

---

[1] The record is immense, and the parties' briefs (collectively, over 100 pages) often offer no record citations, bury citations within footnotes, or cite entire documents rather than specific pages. While the Court need not scour the record searching for allegations or facts that support the parties' arguments, *see, e.g.*, *Magee v. Varsity Brands Holding Co., Inc.*, No. 3:24-CV-833-E-BK, 2024 WL 5345090, at *1 (N.D. Tex. Dec. 26, 2024) (Toliver, J.), *rec. adopted*, 2025 WL 256983 (N.D. Tex. Jan. 21, 2025) (Brown, J.) (citing *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019), it has still endeavored to consider the full record to ensure a thorough analysis.

DeSoto ISD moves to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* DeSoto Mot. Dismiss (ECF No. 27). The individual defendants move to dismiss Plaintiff's claims for failure to state a claim under Rule 12(b)(6) and based on qualified and governmental immunity. *See* Indiv. Mot. Dismiss (ECF No. 26).

The Motions to Dismiss have been fully briefed and are ripe for determination.

## Legal Standards

Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). The Court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.*

Lack of subject matter jurisdiction may be found by looking at "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced

in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

To establish standing, "a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967). Thus, there must be an "actual controversy" between the parties that is ripe. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). When determining whether a controversy is ripe, "key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987). If further factual development is required, a case is not ripe. *Id.* at 587.

9

When dismissal under both 12(b)(1) and 12(b)(6) grounds apply, the Court should dismiss only on the jurisdictional ground under 12(b)(1), without reaching the merits of the claim under 12(b)(6). *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

<u>Rule 12(b)(6)</u>

To defeat a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere

possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

The ultimate question on a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir.

2004). Stated another way, when a court considers a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations in the pleadings to determine whether they are enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

"Pro se complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Texas*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-CV-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

A plaintiff may not amend his allegations through a response to a motion to dismiss, Fed. R. Civ. P. 8(a), but leave to amend must be granted freely "when justice so requires," Fed. R. Civ. P. 15(a)(2). One reason to deny amendment is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 391 (5th Cir. 2023)

12

(quoting *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

Qualified Immunity

The individual defendants raise qualified immunity as an affirmative defense to Plaintiff's § 1983 claims. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992) (A governmental employee sued under § 1983 may assert the affirmative defense of qualified immunity). "Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 477 (N.D. Tex. 2019) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In other words, qualified immunity protects government officials when their actions "could reasonably have been believed to be legal." *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). And "this immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Morgan*, 659 F.3d at 371).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). *See also King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) ("[O]nce properly raised by the defendant, the 'plaintiff has the burden to negate the assertion of qualified immunity.'") (citing *Collier v.*

13

*Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009)); *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.").

"'State employment is generally sufficient to render the defendant a state actor,'" and a defendant necessarily "acts under color of state law when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49–50 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 n.18 (1982)). School district officials like the individual defendants "enjoy qualified immunity 'unless Plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Brown*, 985 F.3d at 494 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Further, courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.*

*Monell* Liability

Under *Monell*, a local government entity can be held liable for (1) constitutional violations (2) for which the "moving force" was (3) an official policy or "governmental custom." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). DeSoto ISD, like other school districts, is a local government unit or municipality subject to liability under § 1983. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). "In Texas, the final policymaker for a school

14

district is the Board of Trustees." *Sims v. Dallas Indep. Sch. Dist.*, 2024 WL 495259, at *2 (N.D. Tex. Feb. 7, 2024), *aff'd*, No. 24-10189, 2025 WL 2602362 (5th Cir. Sept. 9, 2025) (per curiam) (citing Tex. Educ. Code § 11.051 and *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 617 n.6 (N.D. Tex. 2017) (Lindsay J.)). When a *Monell* claim fails as to one prong, the Court "need not consider whether [the] claim also fails the other two *Monell* prongs." *Brown*, 985 F.3d at 497 & n.11. And "[i]t is well settled that 'without a predicate constitutional violation, there can be no *Monell* liability.'" *See Pipkins v. Stewart*, 105 F.4th 358, 360 (5th Cir. 2024) (per curiam) (quoting *Loftin v. City of Prentiss, Mississippi*, 33 F.4th 774, 783 (5th Cir. 2022)).

## Preliminary Observations

I. **Plaintiff is not pursuing claims against the DeSoto ISD School Board.**

While Plaintiff's Original Complaint named and asserted claims against the Desoto ISD School Board, *see generally* Original Compl. (ECF No. 3), Plaintiff's Amended Complaint removed the Board as a Defendant and does not assert any claims against the Board, *see generally* Am. Compl. (ECF No. 13). DeSoto ISD noted this development in its motion to dismiss, *see* DeSoto Mot. Dismiss 1 at n. 1 (ECF No. 27), and Plaintiff does not dispute that he is no longer asserting claims against the Board. The docket should reflect that the DeSoto ISD School Board is no longer a party to this action.

II. **Defendants are not entitled to dismissal of any claim based solely on Plaintiff's alleged failure to respond to Defendants' arguments.**

DeSoto ISD argues that Plaintiff has abandoned four claims by not defending them in his Response: "Counts XIII (Violation of Texas Education Code § 28.0214 and Board Policy EIA (Local)), XV (Conspiracy to Violate § 1983), XIX (Violation of the Texas Constitution), and XX (Violation of Texas Education Code § 26.003(a)(2))." *See* DeSoto Reply at 1 (ECF No. 33). Indeed, the Fifth Circuit's "well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss." *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023). And a review of Plaintiff's Response reveals that he does not specifically address Defendants' arguments directed at his claims under the Texas Constitution. *See* DeSoto Mot. Dismiss 16 at n. 12; Indiv. Mot. Dismiss 12 at no. 5 (arguing that Plaintiff's claims under the Texas Constitution "should be dismissed for the same reasons as their federal analogues"). But Plaintiff states that he "does not concede any of the legal or factual claims asserted in the Amended Complaint," *see* Resp. 4 (ECF No. 31), and he attempts to address Defendants' arguments directed to his federal Constitutional claims, *see, e.g.*, Resp. at 14–17 (ECF No. 31). Also, Plaintiff did not fail to address Defendants' arguments on the other claims identified by DeSoto ISD. *See* Resp. at 4, 16, 17, 18, 23, 24 (ECF No. 31).

Because Defendants are not entitled to dismissal of any claim based solely on Plaintiff's alleged failure to respond to Defendants' arguments, the Court proceeds with the analysis below.

## Analysis

I.      **Defendants are entitled to dismissal of Plaintiff's procedural due process claims (Counts I and II).**

Plaintiff sues DeSoto ISD and Defendants Campbell, Darden, Starling, Rogers, and Morrow under 42 U.S.C. § 1983 for violating his Fourteenth Amendment procedural due process rights.[2] *See* Am. Compl. ¶¶ 266–314 (ECF No. 13). Plaintiff also asserts a "Due Course of Law" claim under the Texas Constitution against DeSoto ISD and all individual defendants. *See id.* ¶¶ 632, 649–55.

Plaintiff is entitled to the protections of the Fourteenth Amendment only if he can show deprivation of, or intrusion upon, "a property or liberty interest." *Thomas v. Smith*, 897 F.2d 154 (5th Cir. 1989) (per curiam). Plaintiff alleges that he had protected interests in: (i) assignment to the ECHS program and (ii) exercising "grading authority," under Tex. Educ. Code § 28.0214. *See* Am. Compl.

---

[2] But Plaintiff's claims against the individual defendants, who are employees, representatives, or officials of DeSoto ISD, in their official capacities are effectively claims asserted against DeSoto ISD. *See Jefferson as Next Friend of C.J. v. Waxahachie ISD Bd. of Trustees*, No. 3:24-CV-01904-E, 2025 WL 2775154, at *7 (N.D. Tex. Sept. 3, 2025) (Rutherford, J.), *rec. adopted*, 2025 WL 2773805 (N.D. Tex. Sept. 26, 2025) (Brown, J.); *see also Monell*, 436 U.S. at 690 n.55 (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). Thus, to the extent that Plaintiff's claims against DeSoto ISD fail, they also fail against the individual defendants if Plaintiff asserts those claims against the individual defendants in their official capacities.

17

¶¶ 271, 290. Plaintiff is wrong. The Amended Complaint does not plausibly allege a deprivation of a protected interest, and thus Defendants are entitled to dismissal of Plaintiff's § 1983 procedural due process claims.

A. <u>Plaintiff had no protected interest in his teaching assignment.</u>

To state a claim under the Due Process Clause of the Fourteenth Amendment, Plaintiff "must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in deprivation of that interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995) (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991)).

"The Due Process Clause . . . does not create a property interest in government employment." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). And a public-school teacher does not have a property interest in their assigned position or duties, "absent a specific contractual provision to that effect." *Dooley v. Fort Worth Indep. Sch. Dist.*, 686 F. Supp. 1194, 1199 (N.D. Tex. 1987), *aff'd*, 866 F.2d 1418 (5th Cir. 1989), *cert. denied*, 490 U.S. 1107 (1989).

Plaintiff alleges that his "written employment contract" assigned him to the ECHS program and permitted reassignment "only in the best interest of the District." *See* Am. Compl. ¶ 271 (citing Ex. 40, Employment Contract (ECF No. 13-40)). But Plaintiff's Employment Contract does not mention any particular teaching assignment, ECHS, or the "best interest of the District." *See id.*, Ex. 40, Employment Contract (ECF No. 13-40). Rather, the Employment Contract

18

provides that Plaintiff "shall be subject to assignment and reassignment of positions or duties, additional duties, changes in responsibilities, or work, transfers, or reclassification *at any time during the contract term*." *Id.* ¶ 4 (emphasis added). The Employment Contract further provides that it "combines and supersedes all prior agreements and representations concerning employment." *Id.* ¶ 17. Thus, Plaintiff's Employment Contract, on its face, contains no provision limiting the school district's right to modify his assigned duties. Accordingly, Plaintiff had no property interest in his teaching assignment at ECHS. *See Dooley*, 686 F. Supp. at 1199.

Plaintiff also alleges that his property interest in the teaching assignment at ECHS is "rooted in" "Board Policy DK (Local) and DGBA(Local)" and "[a]pplicable provisions of the Texas Education Code, including § 21.204." *See* Am. Compl. 271. But, as explained above, no property right exists absent "a specific contract provision to that effect." *See Dooley*, 686 F. Supp. at 1199.

Plaintiff's Complaint fails to cite any specific "Board Policy" that creates a property right in his teaching position. *See* Am. Compl. ¶ 271. And although his Response asserts that such policies "provide[] that reassignment must serve 'the best interest of the district'" and "require[] documentation and objective rational," Plaintiff fails to explain how these policies provide him with a constitutionally protected property right. *See* Resp. at 14 (ECF No. 31) (citing ECF No. 13-18). Instead, Plaintiff cites *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 755 (5th Cir. 1986), and argues that "Texas educators with rights under Board Policy may

19

possess a protected property interest." *See id.* But *Jett* does not stand for such a proposition. In *Jett*, the due process issue was whether an oral contract prohibiting removal "except for good cause" created a property interest when the parties' written agreement contained no such provision. *Id.* (emphasis added). The *Jett* court held that it did not. *See id.*

To be sure, the Fifth Circuit in *Jett* references its decision *Winkler v. County of DeKalb*, where a public employee who was transferred to a new position with "greatly reduced responsibilities" suffered a deprivation of a property interest. *See id.* (citing *Winkler v. DeKalb Cnty.*, 648 F.2d 411 (5th Cir. 1981)). But central to the holding in *Winkler* was that the "[DeKalb] County Code and the conduct of the parties" "indicate[d] to employees that transfers will be to a position whose duties are of the kind or quality encompassed by their [current job]," and "established a reasonable expectation that an employee will not be demoted to a position of vastly diminished responsibilities without cause." *See id.*

The *Jett* court also cited to *Kelleher*—decided a few years after *Winkler*—where the court "rejected a public employee's claim of entitlement" to teach specific courses or to specific teaching duties because there was no "guarantee, contract, or statute" creating such entitlement and because her "new duties 'were well within the bounds' of duties generally assigned to those in her position." *See id.* (citing *Kelleher v. Flawn*, 761 F.2d 1079 (5th Cir. 1985)).

Here, Plaintiff does not allege that "local policy or conduct of the parties" indicates that transfers will be to positions "that are the kind or quality"

encompassed by their current job. Nothing in the Employment Contract or in the Board Policy cited by Plaintiff supports such a finding. And even so, Plaintiff's reassignment from one math class to another resulted in "new duties" that were "well within the bounds of duties generally assigned" to high school math teachers like Plaintiff. *See id.*

Further, Texas Education Code § 21.204 does not create a property interest in Plaintiff's position. Section 21.204 provides that "[a] term contract must be in writing," "include the terms of employment," and that "[e]ach contract . . . is subject to approval by the board." Tex. Educ. Code § 21.204. The only mention of "property interest" in § 21.204 states "a teacher *does not* have a property interest in a contract beyond its term." *See id.* Accordingly, Plaintiff fails to plausibly allege any property interest in his teaching assignment at ECHS.

Nor does Plaintiff show a deprivation or intrusion upon any liberty interest resulting from his re-assignment. To establish deprivation of a liberty interest, Plaintiff must show "that he was stigmatized in connection with denial of a right or status recognized by state law." *See Thomas v. Smith*, 897 F.2d 154, 156 (5th Cir. 1989) (per curiam). "Typically, reassignment alone is insufficient to trigger such a liberty interest." *Id.* As the Fifth Circuit noted in *Moore v. Otero*:

> When an employee retains his position even after being defamed by a public official, the only claim of stigma he has derives from the injury to his reputation, an interest that *Paul [v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976),]* reveals does not rise to the level of a liberty interest. The internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a

> loss of employment, does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment.

*Moore v. Otero*, 557 F.2d 435, 438 (5th Cir. 1977) (alterations in original). But the mere reassignment to teaching a different high school math class "does not constitute such a change of status as to be regarded as essentially a loss of employment." *See id.*; *see also Thomas*, 897 F.2d at 156. Plaintiff has thus failed to plausibly allege a liberty interest in his teaching assignment at ECHS.

B.  Plaintiff had no protected interest in "exercising grading authority."

Plaintiff also does not have a liberty or property interest in "exercising grading authority" under Texas Education Code § 28.0214 or Board Policy. *See* Am. Compl. ¶ 289, 291 (ECF No. 13). To have a protected property interest, Plaintiff must show a "legitimate entitlement" to a benefit which he was denied. *See Bd. of Regents*, 408 U.S. at 577. A "property interest" is not "created by the Constitution," but stems from "an independent source such as state law." *See, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Roth*, 408 U.S. at 577). But while an "underlying property interest may be created by state law, '*federal constitutional law* determines whether that interest rises to the level' of a constitutionally protected interest." *Klingler v. Univ. of S. Mississippi, USM*, 612 F. App'x 222, 227 (5th Cir. 2015) (emphasis in original) (quoting *Town of Castle Rock, Colorado v. Gonzales,* 545 U.S. 748, 756–57 (2005)).

Texas Education Code § 28.0214 provides:

22

(a) An examination or course grade issued by a classroom teacher is final and may not be changed unless the grade is arbitrary, erroneous, or not consistent with the school district grading policy applicable to the grade, as determined by the board of trustees of the school district in which the teacher is employed.

(b) A determination by a school district board of trustees under Subsection (a) is not subject to appeal. This subsection does not prohibit an appeal related to a student's eligibility to participate in extracurricular activities under Section 33.081.

Tex. Educ. Code § 28.0214. Although this statute purportedly gives Plaintiff the authority to determine his students' grades, Section 28.0214 does not provide Plaintiff a constitutionally protected property interest in issuing any particular grades.

Chapter 28 of the Texas Education Code—the broader statutory framework of § 28.0214—concerns courses of study and advancement for Texas public school students. *See generally* Tex. Educ. Code Ch. 28. Read in context, Section 28.0214 contemplates a student's ability to challenge his grades, providing that they may appeal those grades to the school board, or to the Commissioner related to their eligibility to participate in extracurricular activities. *See id.* Plaintiff does not explain how he has a legitimate entitlement to grading authority under a statute that gives the school board, rather than the teacher, final authority to determine whether a grade should be changed. *See id.*; *cf. Town of Castle Rock*, 545 U.S. at 756 (recognizing that a benefit is not protected "if government officials may grant or deny it in their discretion"). In fact, Plaintiff alleges that a teacher's grades may be changed "by the board of trustees." *See* Am. Compl. ¶ 290 (ECF No. 13). Plaintiff

has failed to plausibly allege that his "grading authority" is "a right or status recognized by state law," and thus he has no liberty interest in such authority.

Further, to allege a deprivation or intrusion on a liberty interest, Plaintiff must show "that he was stigmatized in connection with denial of a right or status recognized by state law." *See Thomas*, 897 F.2d at 156. Plaintiff alleges that the deprivation of grading authority caused "reputational harm," "loss of instructional authority," "respect[]," and "reduced TIA eligibility and negative impact on performance metrics." *See* Am. Compl. ¶ 311. But reputational harm—and the resulting loss of authority and respect—"does not rise to the level of a liberty interest" where, as here, an employee retains their position. *See Otero*, 557 F.2d at 438. And Plaintiff's allegations that grade increases "reduced his TIA eligibility and [had] a negative impact on performance metrics tied to student achievement" are not plausible. *See* Am. Compl. ¶ 311. Indeed, Plaintiff alleges administrators *increased* the grades he assigned to students, and, elsewhere in the Amended Complaint, alleges that higher grades and better student performance improve TIA eligibility and benefits. Plaintiff has thus failed to plausibly allege that he was "stigmatized in connection with [the] denial" of that right. *See id.*

Plaintiff cites *Wagner v. Texas A & M Univ.*, 939 F. Supp. 1297, 1310 (S.D. Tex. 1996), for the proposition that "grading interference may implicate constitutional rights where tied to law or policy." *See* Resp. 15 (ECF No. 31). But the page citation provided by Plaintiff does not support that proposition, and

24

*Wagner* does not discuss grades or "grading interference" at all.[3] *See Wagner*, 939 F. Supp. at 1310. Plaintiff does not cite case law or legal authority—from any jurisdiction—providing that a teacher has a property or liberty interest in his "grading authority." And Plaintiff cites no "Board Policy" creating such an interest.

C. <u>Even if Plaintiff had a protectable interest, he was afforded meaningful due process.</u>

Finally, even if Plaintiff had any protectable interest, "the deprivation by state action of a protected interest . . . is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Castille v. Port Arthur ISD*, No. 24-40644, 2026 WL 507783, at \*6 (5th Cir. Feb. 24, 2026) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)) (emphasis added). The "due process" required depends "on the importance of the interests involved and the nature of the subsequent proceedings," but "the essential requirements of due process . . . are notice and an opportunity to respond." *See id.* (quoting *Cleveland Bd. of Educ.*, 470 U.S. at 542, 545–546). Plaintiff alleges that

---

[3] The Court is troubled by the inaccuracies in Plaintiff's Response. As Defendants correctly identify, several citations in Plaintiff's Response fail to support the propositions for which they are cited, and at least two referenced cases do not exist. *See* Defs.' Replies (ECF Nos. 32, 33). These errors are typical of unverified, AI-generated filings, which have become an increasing concern for courts in recent years. While no federal or local rule explicitly prohibits the use of artificial intelligence in litigation, all parties—including those proceeding pro se—must fulfill their obligations under Federal Rule of Civil Procedure 11(b), which requires lawyers and unrepresented parties alike to certify that, after a reasonable inquiry, their legal contentions are warranted by existing law. Consequently, this duty necessitates a careful review of AI-generated statements and citations to ensure accuracy. The Court also notes that Local Rule 7.2(f)—adopted after the relevant pleadings were filed—requires parties to disclose the use of generative AI.

he proceeded through the school district's formal grievance procedure and participated in multiple hearings, where he had an opportunity to raise the issues of his reassignment and grading authority with various administrators. Am. Compl. ¶¶ 261–264. Plaintiff's allegations and documents attached to the Amended Complaint reveal that Plaintiff received "meaningful due process." *See generally id.*

Plaintiff has failed to plausibly allege any protected property or liberty interest, or that he was denied due process. Thus, Plaintiff has failed to state a claim for a violation of his procedural due process rights. Accordingly, because Plaintiff failed to allege a constitutional violation, DeSoto ISD cannot be liable under *Monell,* and the individual defendants are entitled to qualified immunity. *Pipkins* F.4th at 360 (no *Monell* liability without a predicate constitutional violation); *Johnson*, 507 F. App'x at 372 ("In the absence of a constitutional violation, qualified immunity protects [the defendant] from liability.").

## II.   Defendants are entitled to dismissal of Plaintiff's substantive due process claims (Counts III and XXI).

Plaintiff also sues DeSoto ISD and Defendants Campbell, Darden, Starling, Rogers, and Morrow under 42 U.S.C. § 1983 for violating his substantive due process rights and liberty interests. In addition to procedural protections, the Fourteenth Amendment provides a substantive due process protection against government conduct that "shocks the conscience," "regardless of the fairness of the procedures used to implement them." *See Cohly v. Miss. Insts. of Higher Learning*, 23-50232, 2024 WL 65432 (5th Cir. Jan. 5, 2024) (per curiam) (quoting

26

*Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011)). "To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Id.* (quoting *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993).

Plaintiff alleges that he had "constitutionally protected interests in: (i) [h]is continued assignment at [ECHS] . . . (ii) his professional integrity and autonomy as a licensed educator . . . [and] (iii) his reputation and standing in the educational community." *See* Am. Compl. ¶ 321 (ECF No. 13). But, as discussed above, Plaintiff has no property interest in his teaching assignment at ECHS. *See Dooley*, 686 F. Supp. at 1199. And as to Plaintiff's claimed interests in "professional integrity" and "reputation" in the "educational community," Plaintiff points to no state law or contractual provision demonstrating that these are protectable "property interests." Thus, such interests are protected, if at all, as "liberty interests."

A public employee's liberty interest may be implicated when an employer, in refusing to rehire an employee, makes a charge against him that might "seriously damage his standing in the community or otherwise imposes a stigma on the employee that forecloses his freedom to take advantage of other employment opportunities." *Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983) "To establish a liberty interest sufficient to implicate the fourteenth amendment's safeguards, the employee must show not only that he has been stigmatized, but that he was

stigmatized in or as a result of the discharge process; that the charges were made public; and that he was denied a meaningful hearing to clear his name." *See id.* (citing *Dennis v. S & S Consol. Rural High Sch. Dist.*, 577 F.2d 338, 341 (5th Cir. 1978) and *Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir. 1975)).

Plaintiff has failed to plausibly allege a liberty interest. First, the Supreme Court has held that an interest in "reputation" is "neither 'liberty' nor 'property'" protected by the Constitution. *See Paul v. Davis*, 424 U.S. 693, 712 (1976). Second, Plaintiff does not allege that he was discharged from his teaching job, only that he was reassigned to another teaching position. *See* Am. Compl. ¶ 675. Third, although Plaintiff alleges that "[p]arents were told or led to believe that" Plaintiff was reassigned due to "misconduct or excessive complaints," these allegations are conclusory. *See id.* Fourth, Plaintiff has failed to allege any facts showing that any comments "foreclose[d] his freedom to take advantage of other employment opportunities." *Wells*, 711 F.2d at 676. And finally, although Plaintiff alleges that he was not "provided a hearing to clear his name," that allegation is contradicted by Plaintiff's allegations that he participated multiple grievance hearings. *See* Am. Compl. ¶¶ 126, 675 (ECF No. 13); *but see, e.g.*, Am. Compl. ¶¶ 261–264.

But even assuming Plaintiff had a constitutionally protected liberty interest in his teaching assignment at ECHS, Plaintiff has failed to plausibly allege that DeSoto ISD's termination of that interest was "arbitrary and capricious." To show termination of an interest was "arbitrary or capricious," Plaintiff must "demonstrate that the abuse of power by the state official shocks the conscience."

28

*See Lewis*, 665 F.3d at 631 (quoting *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007)). This requires Plaintiff to show "that a public employer's decision 'so lacked a basis in fact' that it could be said to have been made 'without professional judgment.'" *Jones v. La. Bd. Of Supervisors of Univ. of La. Sys.*, 809 F.3d 231, 240 (5th Cir. 2015) (quoting *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998)). "The bar is high because 'a federal court is generally not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.'" *Id.* (quoting *Honore v. Douglas*, 833 F.2d 565, 569 (5th Cir. 1987)).

Plaintiff argues that Defendants' arbitrary conduct included "(i) removing [Plaintiff] from his ECHS position based on undocumented, unsubstantiated parent complaints, (ii) changing student grades . . . to placate parents and undermine [Plaintiff's] authority, (iii) fabricating or exaggerating performance concerns to justify placing Plaintiff on a [TINA plan], (iv) suppressing evidence and denying access to grievance records and complaints . . . denying [Plaintiff] any fair review process, and (v) ratifying these acts at the highest levels of district governance, including at Levels I, II, and III of the grievance process." *See* Am. Compl. ¶ 323. These allegations fall short of "shocking the conscience." Plaintiff presented his side of the story in three separate grievance proceedings, and the school administrators rejected it. *See* Am. Compl. Ex. 23, Plaintiff's Grievance Record (ECF No. 13-23), Ex. 39 Level III Grievance Transcript (ECF No. 13-39); *see also Cohly*, 2024 WL 65432, at *4. Plaintiff's allegations do not show

Defendants' decisions "so lack a basis in fact as to have been made without professional judgment." *Cohly*, 2024 WL 65432, at *4 (citation modified). In fact, the allegations and documents attached to the Amended Complaint reveal that Defendants had a rational basis for their actions—Plaintiff received several student and parent complaints and acted in a manner that administrators, students, and fellow teachers found objectionable. Plaintiff has thus failed to plausibly allege a violation of his substantive due process rights. *See* Am. Compl. ¶¶ 23–24, 26–27, 34, 45, 46, 60, 97, 98 (ECF No. 13); *see also* Am. Compl. at Ex. 23, Plaintiff's Grievance Record (ECF No. 13-23), Ex. 39 Level III Grievance Transcript (ECF No. 13-39)

Plaintiff also asserts a standalone claim for "violation of liberty interest" against the individual defendants only. *See* Am. Compl. ¶¶ 668–681. In this claim, Plaintiff again alleges that he has a liberty interest in his "professional reputation" and the "ability to pursue [his] chosen occupation." *Id.* ¶ 672. But, for the reasons explained above, his standalone claim fails. Plaintiff does not have a constitutionally protected liberty interest in his reputation. And he fails to allege facts showing that any decision was arbitrary or capricious. *Id.* ¶ 675 (acknowledging that his removal followed "administrative complaints" and "administering zeros" to students.). Furthermore, his allegations related to this claim are conclusory and lack factual support.

Accordingly, because Plaintiff failed to allege a constitutional violation, DeSoto ISD cannot be held liable under *Monell,* and the individual Defendants are

30

entitled to qualified immunity. *Pipkins* F.4th at 360 (no *Monell* liability without a predicate constitutional violation); *Johnson*, 507 F. App'x at 372 ("In the absence of a constitutional violation, qualified immunity protects [the defendant] from liability.").

### III.    **Defendants are entitled to dismissal of Plaintiff's First Amendment retaliation claim (Count IV).**

DeSoto ISD and Defendants Campbell, Darden, Starling, Rogers, and Morrow move to dismiss Plaintiff's § 1983 claim for First Amendment retaliation under Rule 12(b)(6). *See* Resp. 14 (ECF No. 31). To state a § 1983 claim for "employment retaliation related to speech, a plaintiff–employee must show: (1) [the plaintiff] suffered an adverse employment action; (2) [the plaintiff] spoke as a [private] citizen on a matter of public concern; (3) [the plaintiff's] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)). Defendants argue that Plaintiff has failed to state a claim with respect to the first and second elements. *See* Mot. Dismiss. 21–23 (ECF No. 26).

The second element involves two related questions of law to be resolved by the Court: (1) "[w]hether a statement is made as an employee or as a citizen" and (2) "whether a statement addresses a matter of public concern." *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 736 (5th Cir. 2015); *see also Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 389 (5th Cir. 2017). "[T]here is no First

Amendment protection for the speech at all when public employees make statements as part of their official duties." *Culbertson v. Lykos*, 790 F.3d 608, 617–18 (5th Cir. 2015). "Such '[j]ob-required speech is not protected,' even when it irrefutably addresses a matter of public concern." *Anderson*, 845 F.3d at 592 (quoting *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692–93 (5th Cir. 2007)).

When determining whether a public employee's speech was part of his or her official duties, "[t]he proper inquiry is a practical one." *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). The Court must "focus[ ] solely on whether the speech at issue is *ordinarily* within the scope of the employee's professional duties." *Howell v. Town of Ball*, 827 F.3d 515, 523–24 (5th Cir. 2016) (citing *Lane v. Franks*, 573 U.S. 228 (2014) and *Garcetti*, 547 U.S. at 424–25); *see Anderson*, 845 F.3d at 593–99 (explaining how to determine the character of the plaintiff–speaker after *Garcetti* and *Lane* ); *Hardesty v. Cochran*, 621 F. App'x 771, 776–77 (5th Cir. 2015) (per curiam) (explaining various factors "for determining whether and when a public employee is speaking as a citizen").

In explaining the necessary "practical inquiry" the district court must make, the Fifth Circuit emphasized that no protection exists "with regard to speech made pursuant to a public employee's official duties." *Anderson*, 845 F.3d at 593. Speech made while at work or about work is not necessarily made pursuant to an employee's official duties and thus may still be protected, so long as the speech has "an analogue to speech by citizens who are not public employees." *Id.* at 593–594.

32

Expanding on this distinction, the Fifth Circuit reasoned that speech "made pursuant" to an employee's official duties is speech "made 'in the course of performing [the employee's] job.'" *Id.* at 595 (quoting *Williams*, 480 F.3d at 694). The Fifth Circuit then turned to the *Restatement (Third) of Agency* to illustrate whether an employee's speech is made in the course of performing his or her job. *Id.* at 596–97 (citing Restatement (Third) of Agency § 7.07 (2006)). Under the *Restatement*, speech subject to an employer's control, "even if the employer has not actually directed [the employee] to speak, not to speak, or how to speak," may still be speech made in the course of performing the employee's job and thus unprotected. *Id.* at 596. "[S]peech that *owes its existence* to a public employee's professional responsibilities" is unprotected speech made as an employee rather than as a citizen. *Id.* at 597 (quoting *Garcetti*, 547 U.S. at 421–22); *see also Hardesty*, 621 F. App'x at 776–777 (listing out "several factors" that guide the "practical and fact-intensive" inquiry about whether a public employee speaks as a citizen or employee).

Relevant here, "when an employee merely voices a grievance up the chain of command at his workplace, it is particularly likely that the employee is speaking pursuant to his official duties." *Hardesty*, 621 F. App'x at 776–77; *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008). Where, by contrast, "a public employee takes his job concerns to persons outside the work place, . . . then those external communications are ordinarily not made as an employee, but as a citizen."

33

*Hardesty*, 621 F. App'x at 776–777. That said, whether the employee directs the speech internally or externally is not dispositive. *Id.* Additionally,

> the fact that an employee gives a statement in an unauthorized manner, or in contravention of the wishes of his superiors does not convert his statement into protected citizen speech. Notably, it is not the content of the speech that matters, but the role the speaker occupied when he said it. Therefore, the critical question is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties. Consequently, the First Amendment protects speech even when it concerns information related to or learned through public employment.

*Id.* (cleaned up).

In this case, Plaintiff alleges that he "engaged in protected speech" when he (1) "objected to mandatory lesson plan formatting"; (2) "opposed grading floors and unexcused absence forgiveness policies"; (3) "objected to the District's improper use of NSolve calculator functions during STAAR-aligned testing"; and (4) "reported that teachers who enforced accountability (like himself) were being pushed out while those who participated in the scheme were rewarded." Am. Compl. ¶ 350 (ECF No. 13). Plaintiff asserts that he "filed grievances and internal objections raising these concerns" to "administrators." *Id.* ¶¶ 350, 354.

In response to Defendants' Motion to Dismiss, Plaintiff further argues that his speech was not mere "internal employee grievances" but relates to "systemic misconduct, instructional fraud, and policy violations with direct implications for public education integrity and taxpayer accountability," and he cites *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) in support. Resp. 9 (ECF No. 31).

Plaintiff further asserts that he "made these objections through emails, formal grievances, and direct reports to supervisors, not as part of his teaching duties." *Id.*

But Plaintiff has failed to establish that he engaged in protected speech. Plaintiff's speech was made in the course of performing his job as a teacher. *McKinney*, 518 F.3d at 312–13. First, Plaintiff's speech consisted of reporting information he gained "because of" his employment as a DeSoto ISD teacher. *See Tucker v. Par.*, 582 F. App'x 363, 365 (5th Cir. 2014) (citing *Williams*, 480 F.3d at 694 ("Simply because Williams wrote memoranda, which were not demanded of him, does not mean he was not acting within the course of performing his job.")). Second, Plaintiff's speech relates to his teaching job and how the actions of other students, teachers, and administrators affected his teaching responsibilities. Third, Plaintiff's allegations reveal that he raised these concerns internally, "up the chain of command," to school "administrators." *See McKinney*, 518 F.3d at 313 (recognizing that internal statements "up the chain of command," while not dispositive, often suggest that speech is undertaken in the course of performing a job); Am. Compl. ¶ 354 (ECF No. 13); *see also* Resp. at 9 (ECF No. 31) (acknowledging that his "objections" were raised through "emails, formal grievances, and direct reports to supervisors"). Plaintiff does not allege or argue that he took "his job concerns to persons outside the workplace." *See id.* Finally, it is ordinarily within a math teacher's duties to discuss lesson planning, grading and absence policies and enforcement, and the use of calculators on a test. Based on these allegations, Plaintiff occupied the role of a teacher rather than a private

citizen when making these statements to administrators. Thus, Plaintiff has failed to plausibly allege he was acting as a private citizen, and he cannot state a claim for a violation of his First Amendment rights.

Because Plaintiff failed to allege a constitutional violation, DeSoto ISD cannot be held liable under *Monell,* and the individual Defendants are entitled to qualified immunity. *Pipkins* F.4th at 360 (no *Monell* liability without a predicate constitutional violation); *Johnson*, 507 F. App'x 370, 372 (5th Cir. 2013) (per curiam) ("In the absence of a constitutional violation, qualified immunity protects [the defendant] from liability.").

IV.     **Defendants are entitled to dismissal of Plaintiff's Texas Constitutional Claims (Count XIX).**

Plaintiff also asserts "Due Course of Law" and "Freedom of Speech" claims under the Texas Constitution against DeSoto ISD and all individual defendants. *See id*. ¶¶ 632, 649–55. As Defendants point out, "Texas applies federal interpretations of due process to Texas due course of law claims." *See Am. Precision Ammunition, L.L.C. v. City of Mineral Wells*, 90 F.4th 820, 828 (5th Cir. 2024); *Mosley v. Texas Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019) ("While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction and thus have traditionally followed contemporary federal due process interpretations of procedural due process issues."); see *TitleMax of Texas, Inc v. City of Dallas*, 142 F.4th 322, 331 (5th Cir. 2025) (the Texas Constitution's Due

Course of Law guarantee encompasses both procedural and substantive due process).

Plaintiff's free speech retaliation claims, too, are governed by the federal First Amendment precedents discussed above.[4] *see Jackson v. Port Arthur Indep. Sch. Dist.*, No. 09–15–00227–CV, 2017 WL 1425589, at *4 (Tex. App.—Beaumont Apr. 20, 2017, no pet.) ("Generally, with the exception of cases that involve actions amounting to prior restraints of speech, the Texas Supreme Court has refused to hold that the Texas Constitution's free-speech clause affords a plaintiff greater rights than does the First Amendment") (citing *Texas Dep't of Transp. v. Barber*, 111 S.W.3d 86, 106 (Tex. 2003) and *Operation Rescue-Nat'l v. Planned*

---

[4] Plaintiff does not cite any cases construing article I, section 8 of the Texas Constitution more broadly than the cases interpreting the protection to speech available under the First Amendment of the federal constitution. He merely alleges that the free-speech protection under the Texas Constitution is "at least as broad as the First Amendment." *See* Am. Compl. ¶ 639. Thus, following the lead of Texas state courts and the Fifth Circuit, the Court applies the federal standards to Plaintiff's retaliatory speech claims under the Texas Constitution. *See Jackson*, 2017 WL 1425589, at *4 n.3 ("Because [plaintiff] has not cited any cases construing article I, section 8 of the Texas Constitution more broadly than the cases interpreting the protection to speech available to Texas citizens under the First Amendment of the Federal Constitution, we apply federal cases when analyzing both Jackson's state retaliatory-speech claims and her section 1983 claims."); *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) ("Where, as here, the parties have not argued that differences in state and federal constitutional guarantees are material to the case, and none is apparent, we limit our analysis to the First Amendment and simply assume that its concerns are congruent with those of article I, section 8."); *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 565 (5th Cir. 2003) (analyzing free speech claims under the U.S. Constitution rather than under the broader scope of the Texas Constitution, where teacher did not include in her brief any argument concerning how the broader scope of the Texas Constitution affected her claims).

*Parenthood of Houston & Se. Texas, Inc.*, 975 S.W.2d 546, 557–560 (Tex. 1998)).

Defendants argue that Plaintiff's claims under the Texas Constitution should be

dismissed for the same reason as their federal analogues. *See* Indiv. Mot. Dismiss

12 n.5; DeSoto Mot. Dismiss 16 n.12.

A.  <u>Plaintiff fails to plausibly allege a due course of law claim.</u>

As with his federal due process claims, Plaintiff is entitled to the protections

of the Texas Constitution only if he can show deprivation of, or intrusion upon, "a

property or liberty interest." *Thomas v. Smith*, 897 F.2d 154 (5th Cir. 1989) (per

curiam). Plaintiff alleges that he had protected interests in (i) his "professional

reputation," (ii) his "assignment to a specialized instructional program," (iii) his

"rights under the District's grievance process," and (iv) his "contractual rights to

grading authority and due process." Am. Compl. ¶ 650. Plaintiff is, again, wrong.

The Amended Complaint does not plausibly allege a deprivation of a protected

interest, and thus Defendants are entitled to dismissal of Plaintiff's due course of

law claim.

First, a public-school teacher does not have a property interest in their

assigned position or duties, "absent a specific contractual provision to that effect."

*Dooley*, 686 F. Supp. at 1199. Plaintiff's Employment Contract, ECF No. 13-40,

provides that Plaintiff may be reassigned "at any time during the contract term."

*See* ECF No. 13-40 at ¶ 4. Thus, Plaintiff does not plausibly allege a property

interest in an assignment to a "specialized instruction program." Second, Plaintiff's

Contract does not mention "due process rights" or "grading authority," *see* ECF

No. 13-40, and Plaintiff does not explain how these purported interests arise out of "contractual rights." Third, Plaintiff's "professional reputation" is "neither 'liberty' or 'property'" protected by the US Constitution. *See Paul*, 424 U.S. at 712. And finally, Plaintiff fails to cite to any specific "rights under the District's grievance process" or explain how such rights created a constitutionally protected interest. But even if Plaintiff had a protectable interest in the "grievance process," he has not plausibly alleged a deprivation of that interest "*without due process of law.*" *Castille*, 2026 WL 507783, at \*6 (emphasis added) ("the deprivation by state action of a protected interest . . . is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."). Here, Plaintiff alleges that he proceeded through the school district's formal grievance procedure, participating in multiple hearings where he had an opportunity to raise any issues with various administrators. *See, e.g.*, Am. Compl. ¶¶ 523, 663; Am. Compl. at Ex. 39, Level III Grievance Hr'g Tr. (ECF No. 13-39). Plaintiff's allegations and the documents attached to Plaintiff's Amended Complaint reveal that he received "meaningful due process." *See generally*, Am. Compl.; *see also id.* Am. Compl. at Ex. 39, Level III Grievance Hr'g Tr. (ECF No. 13-39). Accordingly, Plaintiff's due course of law claim should be dismissed.

B. <u>Plaintiff fails to plausibly allege a free speech claim under the Texas Constitution.</u>

As discussed, the Court analyzes Plaintiff's free-speech retaliation claim under the federal standards. *Jackson*, 2017 WL 1425589, at \*4. To state a retaliation claim for "employment retaliation related to speech, a plaintiff–

employee must show: (1) [the plaintiff] suffered an adverse employment action; (2) [the plaintiff] spoke as a [private] citizen on a matter of public concern; (3) [the plaintiff's] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)). As with Plaintiff's federal claim, Plaintiff again fails to plausibly allege that he spoke as a private citizen.

Here, Plaintiff alleges that he "engaged in protected speech" when he: (i) "objected to grading policies," (ii) opposed "discipline practices," (iii) reported "violations of attendance documentation and lesson plan mandates," and (iv) "filed formal grievances raising matters of public concern including misuse of educational policy and funding tied to performance and ADA reporting." *See* Am. Compl. ¶ 644 (ECF No. 13).

But these allegations establish that Plaintiff was speaking as an "employee" rather than as a "citizen." *See Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 736 (5th Cir. 2015). And "[s]uch '[j]ob-required speech is not protected,' even when it irrefutably addresses a matter of public concern." *Anderson*, 845 F.3d at 592 (quoting *Williams*, 480 F.3d at 692–93).

Indeed, the alleged speech consists of information he gained "because of" his employment as a DeSoto ISD teacher, *Tucker*, 582 F. App'x at 365, and relates entirely to his teaching job. *Anderson*, 845 F.3d at 597 ("[S]peech that *owes its*

40

*existence* to a public employee's professional responsibilities" is unprotected speech made as an employee rather than as a citizen.). Second, although Plaintiff does not specify *who* he raised these concerns to, the allegations throughout the Amended Complaint indicate that these concerns were communicated internally, "up the chain of command." *See McKinney*, 518 F.3d at 313; *see generally* Am. Compl. Plaintiff does not allege or argue that he took "his job concerns to persons outside the workplace." *See id.* Finally, it is ordinarily within a teacher's duties to discuss grading policies, discipline, attendance, lesson planning, and educational policies. Based on these allegations, Plaintiff occupied the role of a teacher rather than a private citizen in making these statements. Thus, Plaintiff has failed to plausibly allege he was acting as a private citizen, and he cannot state a claim for a violation of the Texas Constitution. Accordingly, this claim should be dismissed.

## V. Defendants are entitled to dismissal of Plaintiff's equal protection claim (Count V).

Defendants DeSoto ISD, Campbell, Starling, Primus, Darden, Morrow, Bailey, Polk, and Goss move to dismiss Plaintiff's claim under the Equal Protection Clause, arguing that Plaintiff's allegations are "conclusory" and that his allegations of "disparate treatment are deficient" and "fail to reflect actions by the Individual Defendants." *See* DeSoto Mot. Dismiss 21–22 (ECF No. 27); Indiv. Mot. Dismiss 18–20 (ECF No. 26).

The Equal Protection Clause of the Fourteenth Amendment provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. The Equal Protection Clause directs that

41

similarly situated people should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

To state a claim of race or sex discrimination under the Equal Protection Clause and § 1983, a plaintiff must allege that (1) he received treatment different from that received by similarly situated individuals, and (2) the unequal treatment stemmed from a discriminatory intent. *See, e.g.*, *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (citing *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004)). To demonstrate discriminatory intent, a plaintiff must establish "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id.* (citing *Priester*, 354 F.3d at 424) (internal quotations omitted). "Allegations of discriminatory intent that are merely conclusory, without reference to specific facts, will not suffice." *Id.* (quoting *Priester*, 354 F.3d at 420). "[D]isparate impact alone cannot suffice to state an Equal Protection violation." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citing *Washington v. Davis*, 426 U.S. 229, 246-50 (1976)).

Equal protection jurisprudence typically concerns governmental classifications that affect some groups of citizens differently than others. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008). Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group. *Id.* An equal protection claim can also be made when a plaintiff, rather than alleging class-based discrimination, alleges that he has been singled out as a so-

called "class of one." *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000)). A plaintiff makes a "class of one" claim when he alleges that he has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment. *Id.* (citing *Olech*, 528 U.S. at 564). "So long as 'there is *a* conceivable rational basis for the official action, it is immaterial that it was not *the or a primary* factor in reaching a decision that it was not actually relied upon by the decision-makers or that some other nonsuspect irrational factors may have been considered." *Stein v. Dallas Cnty.*, No. 3:22-CV-1255-D, 2023 WL 2700720, at *2 (N.D. Tex. Mar. 29, 2023) (Fitzwater, J.) (quoting *Reid v. Rolling Fork Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988) (emphasis in original)). "The burden is on the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis.'" *Id.* (quoting *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)).

Plaintiff does not allege class-based discrimination, and thus the Court liberally construes Plaintiff's Amended Complaint as asserting a "class-of-one" equal protection claim. But Plaintiff fails to plausibly allege a violation of the Equal Protection Clause.

First, Plaintiff's Amended Complaint fails to allege any "discriminatory intent." In his Response, Plaintiff argues that some parents had "racially coded objections to [Plaintiff's] policies," and that these objections were "known to administrators." *See* Resp. 20. Plaintiff argues that these facts "plausibly support an inference of discriminatory motive." But Plaintiff's pleading contains no such

43

allegation. He alleges only that these parents' comments are "referenced in multiple exhibits," to which he provides no specific citation. *See id.* Even so, Plaintiff does not explain how the alleged "racially charged parent complaints" are in any way attributable to Defendants. Plaintiff cites *Staub v. Proctor Hosp.* to argue that DeSoto ISD is liable for the unnamed parents' actions based on the "cat's paw" theory. Plaintiff asserts that Defendants "relied on" and "ratified" the parents' racially coded complaints when he was disciplined and reassigned. *See id* (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011)). But *Staub* is not on point. In *Staub*, the question was whether the "discriminatory motive of one of the employer's agents can impose liability on the employer." Plaintiff does not allege, nor is it plausible to assume, that parents of DeSoto High School students were acting as agents for DeSoto ISD.

Second, Plaintiff alleges that "administrative response to racially biased complaints constitutes intentional discrimination," that "[t]he Board of Trustees ratified discriminatory actions," and that there was "District-wide endorsement of racial leniency." But these allegations are conclusory and lack specific factual support. *See* Am. Compl. ¶¶ 371, 373 (ECF No. 13).

Finally, because Plaintiff is asserting "class of one" discrimination, he must show that no reasonably conceivable state of facts could provide a rational basis for Defendants' actions. But the facts alleged by Plaintiff, and the documents attached to his Complaint, reveal that a rational basis for the Defendants' actions existed—Defendants received several complaints from parents and students about

44

Plaintiff, and Plaintiff engaged in conduct that administrators found objectionable. *See* Am. Compl. ¶¶ 23–24, 26–27, 34, 45, 46, 60, 97, 98 (ECF No. 13); *see also* Am. Compl. at Ex. 23, Plaintiff's Grievance Record (ECF No. 13-23), Ex. 39 Level III Grievance Transcript (ECF No. 13-39).

Accordingly, because Plaintiff failed to allege a constitutional violation, DeSoto ISD cannot be held liable under *Monell,* and the individual Defendants are entitled to qualified immunity. *Pipkins* F.4th at 360 (no *Monell* liability without a predicate constitutional violation); *Johnson*, 507 F. App'x at 372 ("In the absence of a constitutional violation, qualified immunity protects [the defendant] from liability.").

## VI.  **Defendants are entitled to dismissal of Plaintiff's § 1981 retaliation claim (Count VI).**

Plaintiff asserts that DeSoto ISD, Campbell, Starling, Primus, Darden, Morrow, Bailey, Medina, Polk, and Goss violated 42 U.S.C. § 1981. DeSoto ISD moves to dismiss this claim under Rule 12(b)(6), and the individual defendants move for dismissal because there is no individual liability under § 1981 and because they are entitled to qualified immunity. *See* DeSoto Mot. Dismiss 28–29 (ECF No. 27); Indiv. Mot. Dismiss 26–27 (ECF No. 26).

A.  <u>The individual defendants are entitled to qualified immunity.</u>

The individual defendants argue that they are entitled to qualified immunity because "it is not clearly established in the Fifth Circuit that a § 1981 retaliation claim can be brought against a government official in their individual capacity. *See* Indiv. Mot. Dismiss at 26–27. Indeed, dismissal based on qualified immunity is

appropriate when the law is ambiguous as to liability. *See Culbertson*, 790 F.3d at 627. And the burden is on the plaintiff to demonstrate the inapplicability of the qualified immunity defense, once raised. *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021). When attempting to show that a right was clearly established at the time of the challenged conduct, "[i]t is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality. *Vann v. City of Southaven, Mississippi*, 884 F.3d 307, 310 (5th Cir. 2018)

Courts in this Circuit have recognized that the Fifth Circuit is "undecided as to whether Section 1981 claims were cognizable against government officials in their individual capacities." *See, e.g.*, *Sullivan v. City of Dallas, Tex.*, No. 3:21-CV-915-S-BN, 2022 WL 3648625, at *6 (N.D. Tex. July 29, 2022) (Horan, J.), *rec. adopted*, 2022 WL 3650743 (N.D. Tex. Aug. 24, 2022) (Scholer, J.) (collecting cases); *see Blue Mint Pharmco, LLC v. Texas State Bd. of Pharmacy*, 667 F. Supp. 3d 473, 489 (S.D. Tex. 2023); *Russ v. N. Pike Sch. Dist.*, No. 518CV145DCBMTP, 2020 WL 13682829, at *4 (S.D. Miss. Feb. 6, 2020) ("The lack of clarity here means that individual liability for an alleged violation of Section 1981 was not clearly established . . . and thus qualified immunity bars any such claim."); *see also Jones v. City of Houston*, 756 F. App'x 341, 347 n.6 (5th Cir. 2018) (citing *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 338 (5th Cir. 2003) (recognizing tension in Fifth Circuit case law regarding the liability of individual defendants who are not parties to the employment contract)); *Escamilla v. Elliott*, No. 21-50931, 2022 WL 2387354, at *2 n.2 (5th Cir. July 1, 2022) ("Because we affirm the district court's

conclusion that Escamilla failed to show pretext under *McDonnell Douglas*, we do not reach Elliott's argument that Escamilla cannot prevail on her Section 1981 claims against Elliott in her individual capacity."); *Johnson v. Halstead*, 916 F.3d 410, 419 n.3 (5th Cir. 2019) (declining to address an argument "that it is not clearly established that a § 1981 retaliation claim can be brought against a municipal official as opposed to the municipality itself" and noting that the defendant's "failure to raise the 'individual defendant' question also means that this opinion is not precedent on that issue").

In his Response, Plaintiff cites no precedent from the Fifth Circuit regarding individual liability for § 1981 claims. *See* Resp. 21–22 (ECF No. 31) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 423 (5th Cir. 2000) which does not discuss individual liability under § 1981 or involve any individual defendants); *see also Vann*, 884 F.3d at 310 ("Plaintiff … cited nary a pre-existing or precedential case. That alone dooms his case here."). And, "since the law is unsettled as to whether individuals are otherwise subject to Section 1981 liability," the individual defendants are entitled to qualified immunity. *See Sullivan*, 2022 WL 3648625, at * 5–6. Further, although Plaintiff asserts that § 1981 prohibits "race-based retaliation in the making, performance, and enforcement of contracts," *See* Am. Compl. ¶ 382 (ECF No. 13), Plaintiff does not allege that the individual defendants were parties to his employment contract. Accordingly, Plaintiff's § 1981 claims against Campbell, Starling, Primus, Darden, Morrow, Bailey, Medina, Polk, and Goss should be dismissed.

B.  Plaintiff has failed to plausibly allege DeSoto ISD is liable under *Monell.*

The "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *See Fisher v. Dallas Cnty.*, No. 3:12-CV-3604-D, 2014 WL 4797006, at *3 (N.D. Tex. Sept. 26, 2014) (Fitzwater, J.) (quoting *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)). Claims for intentional discrimination include race retaliation claims under 42 U.S.C. § 1981. *See Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463 (5th Cir. 2002). Thus, in analyzing Plaintiff's § 1981 race retaliation claim, the Court "can rely on decisions that address claims brought under Title VII, § 1981, and § 1983. *See Fisher*, 2014 WL 4797006, at *3.

To plausibly allege that DeSoto ISD violated § 1981, Plaintiff must meet the requirements of *Monell*. Under *Monell*, a school district cannot be liable unless the "unconstitutional conduct is directly attributable to the school district through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015).

With respect to his § 1981 claim and *Monell*, Plaintiff alleges:

- DeSoto ISD's Board of Trustees ratified the retaliatory actions by denying grievances at Level III without investigating or addressing race-related claims.
- Principal Campbell, as delegated policymaker under DK(Local), orchestrated and executed the adverse actions.
- The District's culture and grievance responses reflect a custom of retaliating against educators who resist race-based policy distortions.

48

Am. Compl. ¶ 391 (ECF No. 13). These allegations are mere legal conclusions that are not entitled to a presumption of truth. Even liberally construed, Plaintiff does not identify facts from which the Court can infer that DeSoto ISD had any official policy or custom, delegated policy-making authority, or ratified the conduct of any non-policymaker. Accordingly, Plaintiff has failed to state a § 1981 claim against DeSoto ISD.

### VII.    Defendants are entitled to dismissal of Plaintiff's Title VII and TCHRA Claims (Counts VII & XI).

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). The Texas Commission on Human Rights Act (TCHRA) similarly prohibits race and sex discrimination by an employer. Tex. Lab. Code § 21.051. Employment discrimination claims brought under Title VII and the TCHRA are evaluated under the same analytical framework. *See, e.g.*, *Horvath v. City of Leander*, 946 F.3d 787, 791 n.3 (5th Cir. 2020); *see also Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) ("The Supreme Court of Texas has instructed Texas courts to follow the approach of the United States Supreme Court in interpreting Title VII when reviewing TCHRA claims").

Plaintiff's Amended Complaint alleges that DeSoto ISD violated Title VII and the TCHRA by discriminating and retaliating against him because of his race, sex, and engagement in "protected activities," and by creating a "hostile work environment." Am. Compl. ¶¶ 395–413 (Title VII), ¶¶ 476–491 (TCHRA) (ECF No.

13). DeSoto ISD moves to dismiss Plaintiff's claims based on failure to timely exhaust his administrative remedies and failure to state a claim. *See* DeSoto Mot. Dismiss (ECF No. 27)

A. Exhaustion of administrative remedies

Exhausting administrative remedies is a prerequisite to filing suit under both Title VII and the TCHRA. *See Jones v. Beacon Health Options, Inc.*, No. 3:22-CV-1566-S, 2023 WL 3772806, at *3 (N.D. Tex. May 22, 2023); *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863 (5th Cir. 1983) (explaining that exhaustion, while not jurisdictional, is "a precondition to filing suit in district court"). When the pleadings do not show exhaustion, the Court must assume the claims were not exhausted. *See Cruce*, 703 F.2d at 863.

To exhaust administrative remedies, a Texas plaintiff must file a "timely charge" with either the EEOC or the Texas Workforce Commission (TWC). *Id.; see, e.g.*, *Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000) (filing a charge with the TWC satisfies both state and federal exhaustion requirements). Under Title VII, a charge must be filed with the EEOC within 180 days of the "alleged unlawful employment practice." 42 U.S.C.§ 2000e-5(e)(1). The TCHRA imposes the same 180-day deadline for race and sex discrimination claims. Tex. Lab. Code §21.202(a). But, when a claimant "initially instituted proceedings" with a state or local agency—such as by dual-filing with the TWC—the Title VII deadline extends to 300 days. *See* 42 U.S.C. § 2000e-5(e)(1). This extension applies here because Plaintiff alleges that he dual-filed his charge. *See Lopez v. AT&T Mobility Servs.*

*LLC*, 767 F. Supp. 3d 406, 422 (W.D. Tex. 2025) (citing *Griffin v. City of Dallas*, 26F.3d 610, 612–13 (5th Cir. 1994)). The TCHRA's 180-day deadline, however, does not change. *Id.* (citing *Griffin*, 26 F.3d at 612–13).

Plaintiff alleges that he filed a charge of discrimination "with the [TWC] and the EEOC on December 12, 2024." Am. Compl. ¶¶ 258, 489 (ECF No. 13). This allegation sufficiently establishes dual-filing, and thus the 300-day deadline applies to his Title VII claims. *See Lopez*, 767 F. Supp. 3d at 422. After a charge is timely-filed, the plaintiff must then file suit within the period allowed after receiving a right-to-sue notice. *See Nedd v. Dallas Indep. Sch. Dist.*, 3:22-cv-02322-K-BT, 2024 WL 945865, at *6 (N.D. Tex. Feb. 13, 2024) (Rutherford, J.), *rec. adopted*, 2024 WL 947440 (N.D. Tex. Mar. 5, 2024) (Kinkeade, J.) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002)).

Plaintiff does not attach his administrative charge to the Complaint, nor does he appear to allege facts describing the scope of either agency's charge or investigation. He merely asserts that he filed his charge on December 12, 2024. *See* Am. Compl. ¶¶ 258, 410. He does, however, attach a TWC right-to-sue letter. *See* ECF No. 13-1. Liberally construed, Plaintiff's allegations and the attached letter allow the Court to assess timeliness.

The TWC letter, dated February 25, 2025, recites that Plaintiff alleges he was "subjected to Terms/Conditions and Discipline based on [his] Color, National Origin, Race and Retaliation." *See* ECF No. 13-1. It further advises that the TWC was unable to complete an investigation before the 181st day and thus will issue

51

notice of the right to sue. *Id.* The letter instructs Plaintiff that he has 60 days from his receipt of the letter to file suit. *Id.* Plaintiff filed this lawsuit on March 18, 2025—within the 60-day window. But this does not resolve whether the discriminatory acts alleged in the Amended Complaint were timely exhausted. To be timely, Plaintiff must have filed his charge within 180 days of any TCHRA violation, or within 300 days of any Title VII violation. *See Lopez*, 767 F. Supp. 3d at 422 (citing *Griffin*, 26 F.3d at 612–13).

Plaintiff alleges he filed his charge on December 12, 2024. *See* Am. Compl. ¶ 223. DeSoto ISD argues that any claim based on the "Letter of Concern" was filed too late. *See* DeSoto Mot. Dismiss at 2–3 (ECF No. 27). DeSoto ISD also contends that any TCHRA claim based on the March 4, 2024 TINA plan is untimely. *Id.*

To determine timeliness, the Court must "identify precisely the unlawful employment action of which Plaintiff complains." *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 257 (1980); *see also Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996). Assuming the Letter of Concern and TINA plan qualify as adverse actions, the limitations period begins when the employee is informed of the decision—not when its effects are felt. *See Specialty Retailers, Inc.*, 933 S.W.2d at 493.

Plaintiff was informed of the Letter of Concern on November 28, 2023, over 300 days before he filed his charge. Any Title VII or TCHRA claim based on that letter is therefore untimely. *See Lopez*, 767 F. Supp. 3d at 422 (citing *Griffin*, 26 F.3d at 612–13). Plaintiff learned of the TINA plan on March 4, 2024—over 180

days before filing his charge. Any TCHRA claim based on the TINA plan is likewise untimely.

Plaintiff asserts, without elaboration or citation, that the "continuing violations doctrine" applies. See Resp. 7–8 (ECF No. 31). That doctrine may toll the filing period when an unlawful employment practice "manifests itself over time, rather than as a series of discrete acts." *See Noack v. YMCA of Greater Houston Area*, 418 F. App'x 347 (5th Cir. 2011) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004), *abrogated on other grounds*). But Plaintiff's conclusory assertion is insufficient to invoke the doctrine, and he identifies no allegations supporting its application.

B. Discrimination

With respect to any timely exhausted claim, including Plaintiff's Title VII race discrimination claim based on the TINA plan, Plaintiff must allege (1) "an adverse employment action, (2) taken against a plaintiff because of [his] protected status."[5] *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023).

"To plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Harrison*, 82 F.4th at 430

---

[5] DeSoto ISD does not specifically argue that Plaintiff failed to exhaust any discrimination claim based on sex, but the TWC letter does not recite that Plaintiff alleged he was subjected to discrimination on that basis. ECF No. 13-1 (reciting that Plaintiff alleges only that he was "subjected to Terms/Conditions and Discipline based on [his] *Color, National Origin, Race and Retaliation*") (emphasis added).

(quoting *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 497 (5th Cir. 2023)). "The phrase 'terms, conditions, or privileges' should be broadly construed." *See id. (*quoting *Hamilton*, 79 F.4th at 502–504. For example, the phrase is not limited to 'economically adverse employment actions'" *Id.* (quoting *Hamilton*, 79 F.4th at 504). Title VII "does not permit liability for de minimis workplace trifles," but the Fifth Circuit has declined to address "the precise level of minimum workplace harm" necessary to sustain a discrimination claim. *See Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 420 (5th Cir. 2024). And with respect to transfers, a plaintiff "must show *some* harm" –not "significant" harm—"respecting an identifiable term or condition of employment." *See Muldrow v. City of St. Louis, Mo.,* 601 U.S. 346, 350 (2024) (disapproving of lower court's rejection of adverse employment action claims based on transfers that did not cause a "significant" employment disadvantage because "although an employee must show some harm from a forced transfer to prevail . . . she need not show that the injury satisfies a significance test."). Additionally, the harm borne of any adverse employment action must be material. *See Moye v. Tregre*, No. 22-30341, 2024 WL 65424 (5th Cir. Jan. 5, 2024) (per curiam). "While the Fifth Circuit has not definitively addressed the precise level of minimum workplace harm necessary to establish an adverse action, besides stating that something more than de minimis harm is required, being placed in a disadvantageous situation likely suffices." *Harris v. Amazon.com Inc.*, No. 3:22-CV-2279-K-BN, 2024 WL 4958265, at *5 (N.D. Tex. Nov. 14, 2024) (Horan, J.), *rec. adopted*, 2024 WL 4960009 (N.D. Tex. Dec. 3, 2024) (Kinkeade,

J.) (citation modified) (quoting *Liao v. Univ. of Texas at San Antonio*, No. SA-22-CV-01359-XR, 2024 WL 4564278, at \*9 (W.D. Tex. Oct. 23, 2024)).

Plaintiff alleges that his reassignments affected his eligibility for TIA benefits. *See, e.g.*, Am. Compl. ¶¶ 10, 79, 83, 88–93, 253–256 (ECF No. 13). Specifically, Plaintiff asserts that his initial reassignment from ECHS Algebra I to regular Algebra I "sabotaged" his TIA eligibility for the school year; and although he returned to ECHS the next year, he was "assigned to teach Geometry," a "non-STAAR-tested" subject, which is not eligible for TIA incentives. *See id.* ¶¶ 90, 253–256. DeSoto ISD disputes that Plaintiff's TIA eligibility was impacted by his reassignment and argues that TIA eligibility is tied to other factors beyond teaching assignment. *See* DeSoto Mot. Dismiss at 5–6 (ECF No. 27). DeSoto ISD also argues that, beyond the reassignment, Plaintiff's other allegations "are not adverse employment actions," but are "corrective and remedial measures" or "challenges in his work environment." *See* DeSoto Mot. Dismiss 7. But even liberally construing these allegations as identifying an adverse employment action, Plaintiff fails to allege facts to plausibly show that Defendants took such action "because of" a protected characteristic.

Rather, Plaintiff expressly pleads that Defendants punished him *because* he insisted on academic integrity and strictly enforced rules related to attendance and dress codes. Am. Compl. ¶ 368 (alleging that Plaintiff "was reassigned and penalized for insisting on legal compliance and uniform enforcement"); *See also*

Resp. at 18 (arguing Plaintiff "was removed from his advanced ECHS classes based solely on 'overwhelming [parent and student] complaints'").

One way discrimination can be shown is by alleging that others similarly situated outside the plaintiff's protected class were treated more favorably in nearly identical circumstances. *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). "Nearly identical circumstances exist 'when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" *Davis v. Highland Park Indep. Sch. Dist.*, No. 3:25-CV-3463-D, 2026 WL 508306, at *2 (N.D. Tex. Feb. 24, 2026) (Fitzwater, J.) (citations omitted). Additionally, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* And here, Plaintiff alleges:

- A Black female Biology teacher at ECHS admitted she does not enforce dress code or ID policy but was never disciplined and received an "Exemplary" TIA designation.
- A White male Pre-Calculus teacher allowed unsupervised students in class, leading to altercations, yet faced no reassignment or formal discipline.
- Female teachers who submitted no PowerPoint lesson plans or ignored the 50-grade floor policy were not written up, placed on growth plans, or reassigned.

Am. Compl. ¶ 368. But he does not assert that his comparators—the Black female Biology teacher, the White male Pre-Calculus teacher, or the unnamed "female

teachers"—had similar experience, qualifications, or held the same job or responsibilities. Plaintiff's allegations lack factual detail and are insufficient to enable the court to draw the reasonable inference that other non-Black, female teachers were treated more favorably under nearly identical circumstances. Furthermore, with respect to the Black female Biology teacher and the White male Pre-Calculus teacher, Plaintiff's allegations demonstrate that any different treatment Plaintiff received compared to these other teachers was due to his strict enforcement of student codes of conduct, not his race, national origin, color, or sex.

Plaintiff's Amended Complaint contains no plausible allegations that Plaintiff was treated differently than any similarly situated non-Black or female teacher under nearly identical circumstances. *See Davis*, 2026 WL 508306, at \*2. Accordingly, Plaintiff has failed to plead sufficient facts to state a discrimination claim that survives dismissal.

C. Retaliation

DeSoto ISD also argues that Plaintiff fails to state a claim for retaliation because he fails to "allege he engaged in protected activity under Title VII o[r] the TCHRA that resulted in an adverse employment action." *See* DeSoto Mot. Dismiss 12–13. To plead a retaliation claim, Plaintiff must allege that he (1) engaged in activity protected by Title VII or the TCHRA; (2) Defendants took adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *See, e.g., Brazoria Cnty.,*

57

*Tex. v. E.E.O.C.*, 391 F.3d 685, 692 (5th Cir. 2004); *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014). Internal complaints may constitute a protected activity when they refer to unlawful discrimination. *See Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (per curiam); *see also Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam) ("Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." (collecting cases)). And, with respect to a "retaliatory adverse employment action," a plaintiff must show that the challenged action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *See Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826–27 (5th Cir. 2019), *abrogated on other grounds*.

Plaintiff fails to plausibly allege that his internal complaints constituted protected activities. *See Rodriquez*, 540 F. App'x at 328. As the documents attached to the Amended Complaint demonstrate, Plaintiff filed written internal grievances on March 8, 2024, and September 9, 2024, complaining of disagreements with school administrators related to his reassignment from ECHS, lesson planning policy, grading floors, the TINA plan, and the Letter of Concern. *See generally* Am. Compl. (ECF No. 13); Am. Compl. Ex. 16, Employee Complaint Form, Mar. 8, 2024 (ECF Nos. 13-16); Am. Compl. Ex. 23, Employee Complaint Form 8–10, Sep. 9, 2024 (ECF Nos. 13-23); Resp. 7 (ECF No. 31). Plaintiff's first internal grievance, filed March 8, 2024, does not mention discrimination or

unlawful practices based on race or sex. *See* Am. Compl., Ex. 16, Employee Complaint Form (ECF Nos. 13-16). And although the March 8 grievance mentions retaliation, *see id.* at 4, Plaintiff does not assert that the retaliation was "because of" race, sex, or any protected activity. *See id.* Instead, Plaintiff asserts that the purported retaliation resulted from his "previous disagreements with [school administrators]." *Id.* Plaintiff's September 9 grievance, too, does not mention discrimination, retaliation, or suggest that any action was taken because of Plaintiff's race, sex, or other protected activity. *See* Am. Compl., Ex. 23, Employee Complaint Form 8–10 (ECF Nos. 13-23). Because Plaintiff's "internal complaints" do not refer—explicitly or implicitly—to "unlawful discrimination," he has failed to plausibly allege that his filing of internal grievances were protected activities. *See Rodriquez*, 540 F. App'x at 328.

Plaintiff argues that he engaged in protected activity by "objecting to unlawful grading floors" and "[c]hallenging lesson plan mandates" that allegedly violated the Texas Education Code. *See* Resp. 7 (ECF No. 31). To the extent that his "objection" and "challenge" were distinct from the internal grievances discussed above, Plaintiff has failed to show that his "objection" and "challenge" refer to any "unlawful discrimination." *See* Resp. 7 (citing Exs. 10 (ECF No. 13-10) and 49 (ECF No. 13-49), which do not refer to any unlawful discrimination). Accordingly, these activities are not protected. *See Rodriguez*, 540 F. App'x at 328.

Finally, Plaintiff's "[r]eporting NSolve calculator use that conflicted with STAAR protocol," was not a protected activity. *See* Resp. 7 (citing Ex. 49). Although

59

Plaintiff argues in his response that this "reporting" was a protected activity, the exhibit cited by Plaintiff does not refer to any "unlawful discrimination"—it is an email chain among DeSoto High School Math teachers discussing calculator maintenance for Algebra I students. *See* Am. Compl., Ex. 49 (ECF No. 13-49). To be sure, Plaintiff also alleges that on May 19, 2025, he made an "External Report" to the TEA regarding DeSoto ISD's allowance of "prohibited calculator apps" for STAAR testing. *See* Am. Compl. ¶¶ 460–462 (ECF No. 13). But Plaintiff admits that "this report was submitted after" any alleged adverse employment actions occurred. *See id.* ¶ 462.

Plaintiff has also failed to plausibly allege a "causal connection" between the filing of an EEOC charge—a protected activity—and any adverse employment action. *See* DeSoto Mot. Dismiss 13 (ECF No. 27). Plaintiff alleges that Defendants' withdrawal of a student from his class following an altercation between the student and Plaintiff constituted "post-filing retaliation." *See* Am. Compl. ¶¶ 236–246. But Plaintiff does not explain or plausibly allege that such conduct affected a "term, privilege, or condition of his employment." *See id.* Accordingly, Plaintiff fails to plead a retaliation claim under Title VII or the TCHRA.

D.  Hostile Work Environment

To state a hostile work environment claim, a plaintiff must plead facts sufficient to show that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment complained of affected a term,

condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Critically, in order to affect a term, condition, or privilege of employment, the conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.*

Plaintiff alleges that "the totality of the circumstances created a racially and sexually hostile work environment." *See* Am. Compl. ¶ 407. This allegation is conclusory. Plaintiff also points to the following allegations as support for his claim:

- Students and parents were encouraged to file biased complaints that portrayed [Plaintiff] as overly rigid or authoritarian for enforcing policy;
- Defendants ignored racially charged parent statements and administrative gossip undermining [Plaintiff's] authority;
- District personnel (e.g., Starling, Bailey, Medina, Polk) routinely undercut [Plaintiff] in front of students, fostered noncompliance, and reassigned students to weaker instructional settings;
- [Plaintiff] was repeatedly singled out for complying with law and policy when others were not;
- Administrative comments and conduct conveyed that men, and especially Black men, were viewed as problematic or incompatible with DeSoto's preferred "equity model"

Am. Compl. ¶ 407. Only two of these allegations even mention Plaintiff's race or sex. And although actions of non-employees may create a hostile work environment, Plaintiff's allegation that "Defendants ignored racially charged parent statements" is vague, conclusory, and does not contain any facts from which

the Court can infer that the racial animus is attributable to DeSoto ISD. The same is true of Plaintiff's assertion regarding "administrative comments" about "black men."

Similarly, Plaintiff's allegation that the above "actions were pervasive, discriminatory in impact, and allowed to persist despite ongoing grievances and complaints," is conclusory. Finally, Plaintiff does not plead that the misconduct alleged altered the conditions of his employment or created an abusive working environment. Accordingly, Plaintiff's complaint fails to state a claim under Title VII or the TCHRA for a hostile work environment.

VIII. **Defendants are entitled to dismissal of Plaintiff's retaliation and discrimination claims under Title VI of the Civil Rights Act of 1964 (Counts VIII & IX).**

DeSoto ISD argues that Plaintiff lacks standing to pursue a Title VI claim on behalf of "Black or Title I" students in the District. Mot. Dismiss 15 (ECF No. 27). Title VI of the Civil Rights Act of 1964 states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiff alleges that DeSoto ISD and the ECHS receive federal funding under "Title I" of the "Every Student Succeeds Act."[6] *See* Am. Compl. ¶¶ 3, 443, 444 (ECF No. 13).

---

[6] Based on Plaintiff's allegations, it is clear he is referring to Title I of the Elementary and Secondary Education Act (ESEA), as amended by the Every Student Succeeds Act, 20 U.S.C. § 6301 et seq.

But a plaintiff must be an intended beneficiary of, an applicant for, or a participant in a federally funded program in order to state a claim under Title VI. *See Gonzalez v. Northside Indep. Sch. Dist.*, No. SA-20-CV-00926-XR, 2020 WL 4677305, at *4 (W.D. Tex. Aug. 12, 2020) (citing *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996)). And "[s]chool children are the only intended beneficiaries of a federally funded school program." *See Wade v. Travis Middle Sch.*, No. 3:11-CV-0276-G BK, 2011 WL 3880481, at *3 (N.D. Tex. Aug. 9, 2011) (Tolliver, J.), *rec. adopted,* 2011 WL 3897855 (N.D. Tex. Sept. 1, 2011) (Fish, J.); *See also Jackson*, 951 F. Supp. at 1298 ("The intended beneficiaries of a federally funded public school program are school children, not their parents."). Plaintiff, as a schoolteacher, lacks standing to assert a Title VI claim in his own right. *See Wade*, 2011 WL 3880481, at *3. And since he is not asserting claims on behalf of any school children, his claims for discrimination under Title VI should be dismissed for lack of standing.

IX.    **Defendants are entitled to dismissal of Plaintiff's claim under the Texas Whistleblower Act (Count X).**

DeSoto ISD moves under Rule 12(b)(1) to dismiss Plaintiff's Texas Whistleblower Act (TWA) claim, arguing Plaintiff does not plausibly allege the elements of a TWA claim. *See* DeSoto Mot. Dismiss 29–32 (ECF No. 27). Alternatively, DeSoto ISD moves to dismiss Plaintiff's claim under Rule 12(b)(6). *See id.* The Court considers the jurisdictional attack before addressing any attack on the merits.

The TWA mandates that "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code § 554.002.

Under the Act's provision on waiver of immunity, only a public employee who alleges a violation of the Act may sue the employing state or local governmental entity. *See Sherman v. Dallas ISD*, No. 3:10-CV-1146-B-BH, 2011 WL 477500, at *1 (N.D. Tex. Jan. 24, 2011) (Ramirez, J.), *rec adopted*, No. 3:10-CV-1146-B-BH, 2011 WL 477465 (N.D. Tex. Feb. 8, 2011) (Boyle, J.) (citing Tex. Gov't Code § 554.0035 and *State v. Lueck*, 290 S.W.3d 876, 881–82 (Tex. 2009)). This requirement is jurisdictional in nature and requires a plaintiff to actually allege a violation of the Act and not merely reference it. *See Lueck*, 290 S.W.3d at 882. In other words, the elements of a TWA claim "must be included within the pleadings so that the court can determine whether they sufficiently allege a violation under the Act and fall within" the waiver of immunity from suit provided in § 554.0035. *See id.* at 884. A "significant inquiry into the substance of the claims" is not required, however. *Id.*

Plaintiff has included the elements of a TWA claim within his pleading. *See* Am. Compl. ¶¶ 450–475 (ECF No. 13). Thus, this Court has jurisdiction to determine whether Plaintiff has failed to state a claim under Rule 12(b)(6). But

64

Plaintiff does not plausibly allege that he reported any violation of law "to an appropriate law enforcement authority." *See* Tex. Gov't Code § 554.002.

First, Plaintiff does not sufficiently allege that he reported a violation of "law" within the meaning of the TWA. The TWA defines "law" to include only "(A) a state or federal statute; (B) an ordinance of a local governmental entity; or (C) a rule adopted under a statute or ordinance." Tex. Gov't Code § 554.001(1); *see also Nedd*, 2024 WL 945865, at *9. "Other complaints and grievances, including alleged violations of an agency's *internal procedures and policies*, will not support a claim." *Nedd*, 2024 WL 945865, at *9 (emphasis added) (quoting *Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 188 (Tex. App.—Dallas 2012, pet. denied). Plaintiff pleads no facts supporting that the school or board policies at issue were adopted under statute, rule, or ordinance. *See Nedd*, 2024 WL 945865, at *9; Am. Compl. ¶¶ 450–475. Thus, Plaintiff fails to plead a claim under the TWA. *Id.* (citing *Coll. of the Mainland v. Meneke*, 420 S.W.3d 865, 871 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (when plaintiff does not suggest policies were adopted under a statute, "reliance on internal administrative policies cannot serve as the basis for a viable whistleblower claim")).

Further, Plaintiff does not plausibly allege that he reported a violation of law to "an appropriate law enforcement authority." Plaintiff alleges that he made internal reports to "administrators" within DeSoto ISD, whom he alleges "he reasonably believed . . . were appropriate law enforcement authorities for purposes of the [TWA]." Am. Compl. ¶¶ 458–459. "An appropriate law enforcement

65

authority" within the meaning of the TWA means one that is "a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." Tex. Gov't Code § 554.002(b).

The Texas Supreme Court has explained what constitutes an appropriate law enforcement authority:

> [P]urely internal reports untethered to the [Texas Whistleblower] Act's undeniable focus on law enforcement—those who either make the law or pursue those who break the law—fall short .... "[F]or an entity to constitute an appropriate law-enforcement authority under the [Whistleblower] Act, *it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself*, or it must have authority to promulgate regulations governing the conduct of such third parties. Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status." Accordingly, [the Plaintiff] was required to have an objective good faith belief that he was reporting violations of law ... to an entity that could have enforced, investigated, or prosecuted similar violations against third parties—not just an entity that can internally discipline its own employees for an alleged violation.

*Univ. of Hous. v. Barth*, 403 S.W.3d 851, 857 (Tex. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 682 (Tex. 2013)) (citations omitted) (emphasis added).

Plaintiff does not allege that any of the supervisors to whom he submitted internal reports have authority to enforce, investigate, or prosecute violations of the Texas Education Code against third parties outside of DeSoto ISD. Thus, he

has failed to plausibly plead that he made a report to a law enforcement authority within the meaning of the TWA. *See Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013) (in suit against school district, "complaints to the school board, superintendents, and internal auditor were not good-faith complaints of a violation of law to a 'law enforcement authority' under the Whistleblower Act[,] . . . [since] [t]here is no evidence that these officials had authority to enforce the allegedly violated laws outside of the institution itself, against third parties generally.").

Plaintiff also alleges that on May 19, 2025, he made an "External Report" to the Texas Education Agency (TEA) regarding DeSoto ISD's allowance of "prohibited calculator apps" for STAAR testing. *See* Am. Compl. ¶¶ 460–462. But assuming the TEA is an appropriate law enforcement authority, Plaintiff admits that "this report was submitted after" the alleged adverse employment actions occurred. *See id*. ¶ 462. To plausibly allege a TWA claim, a plaintiff must plead that he suffered "retaliation" *as a result of* making a report to law enforcement authority. *See City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022) (Plaintiff must show that "the adverse action would not have occurred when it did if the employee had not reported the illegal conduct."). Plaintiff therefore fails to plausibly allege a TWA violation with respect to his report to the TEA.

Plaintiff fails to state a TWA claim, and this claim should be dismissed under Rule 12(b)(6).

X.   **Defendants are entitled to dismissal of Plaintiff's breach of contract claim (Count XII)**

DeSoto ISD moves to dismiss Plaintiff's breach of contract claim under Rule 12(b)(1) for failure to exhaust administrative remedies and, alternatively, under Rule 12(b)(6) for failure to state a claim. *See* DeSoto Mot. Dismiss at 32, 33 (ECF No. 27). Again, the Court must consider the jurisdictional attack before addressing any attack on the merits.

Generally, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (citing *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000)). Until then, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. *Id.* "Requiring exhaustion of administrative remedies is not meant to deprive an aggrieved party of any legal rights. It is meant, rather, to provide an orderly procedure by which aggrieved parties may enforce those rights." *Ysleta Indep. Sch. Dist. v. Griego,* 170 S.W.3d 792, 795 (Tex. App.-El Paso 2005, pet. denied). Through Section 7.057(a) of the Texas Education Code, the Texas Legislature has granted the Commissioner of Education "exclusive authority to resolve certain disputes." *See McIntyre v. El Paso Indep. Sch. Dist.*, 499 S.W.3d 820, 823 (Tex. 2016). "Where the Legislature grants the Commissioner authority to resolve a dispute," parties must first seek relief through an administrative appeal to the Commissioner before resorting to the courts. *Id.*

Section 7.057(a) provides:

a person may appeal in writing to the Commissioner if the person is aggrieved by:

(1) the school laws of this state; or

(2) actions or decisions of any school district board of trustees that violate:

> (A)  the school laws of this state; or

> (B)  a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

Tex. Educ. Code § 7.057(a). According to the Supreme Court of Texas, the Commissioner's jurisdiction under Texas Education Code § 7.057 "is straightforward." *Davis v. Morath*, 624 S.W.3d 215, 222 (Tex. 2021) (citing Tex. Educ. Code § 7.057(a)). And although section 7.057(a) provides that a person "may appeal" to the Commissioner, the statute "require[s] a person who chooses to appeal to first seek relief through the administrative process." *See Cedar Hill Indep. Sch. Dist. v. Gore,* No. 05-16-00460-CV, 2017 WL 2981970, at *3 (Tex. App.—Dallas July 13, 2017, pet. denied) (citing *Clint Indep. Sch. Dist. v. Marquez,* 487 S.W.3d 538, 545 (Tex. 2016)). In other words, the term "may appeal" provides that the decision to appeal is optional, "but the place of trial is jurisdictional." *See id.*

Here, Plaintiff claims that DeSoto ISD violated one or more provisions of his written employment contract and that such breach causes or would cause monetary harm. *See* Am. Compl. ¶ 504 (ECF No. 13). Specifically, Plaintiff alleges

69

that he was reassigned from his teaching position at ECHS, and that such reassignment deprived him of his TIA eligibility. *See id.* ¶ 511, 513 (alleging monetary damages as a result of the breach). Despite Plaintiff's conclusory assertion that "this claim does not seek to interpret or enforce 'school law' under [§7.057(a)]" he alleges—in the same sentence—that the purpose of the claim is to "enforce written contractual terms," thus invoking §7.057(a)(2)(A)-(B). *See* Am. Compl. ¶ 507. The damages and relief sought by Plaintiff confirm this. *See id.* ¶¶ 511, 513 (alleging that "as a result of these breaches," Plaintiff suffered "loss of TIA eligibility" and seeking "back pay," "lost wages," and "compensatory damages"). Plaintiff's allegations, therefore, sufficiently establish that the Commissioner had exclusive jurisdiction over Plaintiff's breach of contract action. Tex Educ. Code § 7.057(a); *cf.* Tex. Educ. Code § 11.151 (school district can act only by and through its board of trustees); *See also Larsen v. Santa Fe Indep. Sch. Dist.*, 296 S.W.3d 118, 128 (Tex. App.–Houston [14th Dist.] 2009, pet. denied) (citing *Gutierrez v. Laredo Indep. Sch. Dist.*, 139 S.W.3d 363, 366 (Tex. App.–San Antonio 2004, no pet.)) (noting that a breach of a school district employee's contract itself "involves the 'school laws of the state'"). But Plaintiff has not presented this breach of contract claim to the Commissioner. Instead, he asserts only that he completed the "local grievance process" through "Level I, II, and III hearings." Am. Compl. ¶ 508.

Plaintiff also alleges that he "[c]ompleted the full local grievance process as required under TEC § 7.057(d)," and that he has "[f]iled grievances on March 8, 2024, and September 9, 2024." *See id.* With respect to the grievances Plaintiff

70

purportedly filed "[o]n March 8, 2024 [] and September 9, 2024," Plaintiff does not allege *who* these grievances were presented to, or what the statuses of those grievances are. *See id.* But based on Plaintiff's other allegations, and his Response to the Motions to Dismiss, it is clear these grievances refer to the Level I grievances he filed on March 8, 2024, and September 9, 2024. *See* Am. Compl.¶¶ 467, 523, 663 (noting that Level I grievances were filed March 8, 2024, and September 9, 2024); Am. Compl., Ex. 16, Level I Grievances (ECF No. 13-16), Ex. 23, Grievance Record at 8–10 (ECF No. 13-23); Resp. 8 (ECF No. 31). Accordingly, Plaintiff has not plausibly alleged that he appealed to the Commissioner. Further, § 7.057(d) is inapplicable, and Plaintiff's allegation that he complied with this section is a legal conclusion and contradicted by the record. *See* Tex. Educ. Code § 7.057(d). Section 7.057(d) provides that, *after* appealing to the Commissioner, a person is entitled to appeal "to a district court in Travis County." *See id.* (emphasis added). Plaintiff has not plausibly alleged that he appealed to the Commissioner, let alone to a "district court in Travis County." *See* Am. Compl. ¶ 508.

Thus, Plaintiff's breach of contract claim is unexhausted, and therefore this Court lacks jurisdiction over that claim. *Cf. Carter v. Gibson*, No. 4:10-CV-825-Y, 2011 WL 1515049, at *6 (N.D. Tex. Apr. 20, 2011) ("Under Texas law, Carter was required to exhaust his administrative remedies before seeking relief from the employment contract. Carter has not alleged that he did so; thus, this claim must be dismissed for lack of jurisdiction.") (citing Tex. Educ. Code Ann. § 7.057(a)(2)(B) and *N.E. Indep. Sch. Dist. v. Kelley*, 277 S.W.3d 442, 444-45 (Tex.

App.—San Antonio 2008, no pet.)). Accordingly, Plaintiff's breach of contract claim should be dismissed. *See id.*

## XI. Defendants are entitled to dismissal of Plaintiff's claims for violations of the Texas Education Code and Board Policy (Counts XIII, XX)

DeSoto ISD moves to dismiss Plaintiff's claims under Texas Education Code § 26.003 (Claim XX) and § 28.0214 (Claim XIII) because Plaintiff failed to exhaust his administrative remedies. *See* DeSoto Mot. Dismiss 34 n. 20. The Court should dismiss Plaintiff's claims under the Texas Education Code because these claims are "school laws of the state" under § 7.057(a), and Plaintiff has failed to appeal to the Commissioner. As discussed, the Commissioner has exclusive jurisdiction over appeals where a "person is aggrieved by . . . actions or decisions of any school district board of trustees that violate . . . the school laws of this state." *Morath*, 624 S.W.3d at 221–222 (citing Tex. Educ. Code § 7.057(a)). The "school laws of this state" include Titles I and II of the Texas Education Code and the administrative rules adopted under them. *See* Tex. Educ. Code § 7.057(f)(2). Plaintiff's claims assert violations of §§ 26.003 and 28.0214, which are included under Title II of the Texas Education Code and are therefore "school laws of this state." *See id.* But Plaintiff does not allege that he presented these claims to the Commissioner. Instead, for both Counts, he alleges that he "exhausted the grievance process" through his Level III grievance appeal to the DeSoto Board of Trustees. *See* Am. Compl. ¶¶ 224, 523, 663. Thus, Plaintiff has not exhausted his administrative remedies, and these claims should be dismissed.

XII.  **Plaintiff's defamation claim fails (Count XIV).**

Plaintiff's Amended Complaint asserts a defamation claim against "One or More Unknown Individual Defendants," who are employees of DeSoto ISD. *See* Am. Compl. ¶ 527 (ECF No. 13). Defendants argue that this claim should be dismissed under Rule 12(b)(6) and the Texas Tort Claims Act (TTCA), Tex. Civ. Prac & Rem. Code § 101.106(e), (f). *See* Indiv. Mot. Dismiss 28 (ECF No. 26). Plaintiff, however, argues that "because the District cannot be sued for defamation, § 101.106(f) does not apply to bar" his defamation claim against these unknown individual employees.

While Plaintiff is correct that the TTCA does not waive immunity against DeSoto ISD for defamation claims, the provisions of the Act still apply. *See Franka v. Velasquez*, 332 S.W.3d 367, 375, 381 (Tex. 2011) ("[A]ny tort claim against the government is brought 'under' the Act for purposes of section 101.106, even if the [TTCA] does not waive immunity" and a claim "could have been brought under the [TTCA]" when the "claim is in tort and not under another statute that independently waives immunity."); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) ("Because the [TTCA] is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under the [TTCA]' for purposes of section 101.106.").

Section 101.106(f) of the TTCA affords public employees governmental immunity, and provides:

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code § 101.106(f). When § 101.106(f) applies, it "mandates [] plaintiffs pursue lawsuits against governmental units rather their employees ," *Texas Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 352 (Tex. 2013), and entitles the employee "to dismissal" of the relevant tort claim, *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017).

Although Plaintiff does not identify the individuals against whom he asserts this claim, Plaintiff's claim against these individuals nevertheless meets both elements of governmental immunity for employees: (1) their conduct was "within the general scope of [their] employment" with a governmental unit, and (2) Plaintiff's defamation claim "could have been brought" against DeSoto ISD. *See* Tex. Civ. Prac. & Rem. Code § 101.106(f).

First, these unknown defendants acted within the general scope of their employment when they communicated to parents and staff regarding Plaintiff's reassignment. The TTCA defines "[s]cope of employment" as "the performance for

74

a governmental unit of the duties of an employee's office or employment," which includes "being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5). And Texas caselaw provides that "[t]he employee's acts must be of the same *general nature* as the conduct authorized or incidental to the conduct authorized to be within the scope of employment." *Laverie*, 517 S.W.3d at 753 (emphasis added) (quoting *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007)). The Court "must ask, 'Is there a connection between the employee's job duties and the alleged tortious conduct?'" *Wilkerson v. Univ. of N. Texas By & Through Bd. of Regents*, 878 F.3d 147, 160 (5th Cir. 2017) (quoting *Laverie*, 517 S.W.3d at 753). "The answer, the Texas Courts advise, 'may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus.'" *Id.* (citing *Laverie*, 517 S.W.3d at 753). Although Plaintiff does not identify any specific individuals or their exact positions in DeSoto ISD, he does allege that such persons were "administrators" who either communicated Plaintiff's reassignment or "[a]pproved or authorized" such communication. *See* Am. Compl. ¶ 563 (ECF No. 13). These allegations are sufficient to establish that the employees' conduct was within the scope of their employment or, at least, of the same general nature as the conduct authorized to be within the scope of their employment. *See Laverie*, 517 S.W.3d at 753. A school district may require its administrators to communicate a teacher's reassignment to parents and staff or to have such administrators approve or authorize such a communication. *See* Am. Compl. ¶ 563. Further, there is a clear

75

connection between the communication and approval and the alleged tortious conduct. *See Wilkerson*, 878 F.3d at 160. And even assuming that the communication or approval was improper, wrong, negligent, or motivated by ulterior motives or personal animus, the conclusion remains the same. *See id.* 160–161 (also noting that it does not matter whether the employee may have neglected some procedures or exceeded the scope of their authority—the question is only whether the employee was "discharging duties generally assigned to [her]); *see also Koerselman v. Rhynard,* 875 S.W.2d 347 (Tex. App.—Corpus Christi 1994, no writ).

Plaintiff fails to address this issue or Defendant's argument in his Response. *See* Resp. (ECF No. 31). Even so, this case differs from those where Texas courts found that government employees acted outside the scope of employment. In those cases, the misconduct alleged was not in any way connected with the employees' duties. *See, e.g.*, *Kelemen v. Elliott*, 260 S.W.3d 518, 524 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (on-duty police officer acted outside scope of employment when he kissed a fellow officer without consent); *Terrell ex rel. Est. of Terrell v. Sisk*, 111 S.W.3d 274, 278 (Tex. App.—Texarkana 2003, no pet.) (county judge's secretary acted outside her scope of employment when she caused a fatal accident while driving in her private car to a personal doctor's appointment).

The next question is whether Plaintiff's defamation claim "could have been brought" against DeSoto ISD. *See* Tex. Civ. Prac. & Rem. Code. § 101.106(f). As discussed above, the answer is yes. *See, e.g.*, *Franka*, 332 S.W.3d at 375, 381 (a

claim "could have been brought under the [TTCA]" when the "claim is in tort and not under another statute that independently waives immunity"); *see also Garcia*, 253 S.W.3d at 659. Plaintiff is correct that the TTCA does not waive sovereign immunity for defamation claims. *See* Am. Compl. ¶ 540. But § 101.106(f) asks "not whether [Plaintiff] can succeed on the merits, but whether his claim sounds in tort." *Wilkerson*, 878 F.3d at 162 (citing *Franka*, 332 S.W.3d at 381). Because defamation is a tort, *see WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998), Plaintiff's claims against these unnamed Defendants are "foreclosed," and can be pursued only against DeSoto ISD. Accordingly, because the unnamed defendants are entitled to immunity, the District Judge should dismiss Plaintiff's defamation claim.

## XIII. **Defendants are entitled to dismissal of Plaintiff's conspiracy claims (Count XV, XVI).**

Plaintiff asserts conspiracy claims under 42 U.S.C. §§ 1983 and 1985(3) against all the individual defendants, *See* Am. Compl. ¶¶ 543–590 (ECF No. 13), and the defendants move to dismiss these claims under Rule 12(b)(6). *See* Indiv. Mot. Dismiss at 25–26 (ECF No. 26).

To plead a § 1983 conspiracy claim, Plaintiff must allege "both an agreement among the defendants to commit an illegal act and an actual deprivation of constitutional rights." *Young v. City of Irving*, No. 3:23-CV-1423-D, 2025 WL 888430, at *10 (N.D. Tex. Mar. 21, 2025) (*Young II*) (Fitzwater, J.) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Similarly, a plaintiff asserting a § 1985(3) conspiracy claim must plausibly allege (1) a conspiracy involving two or

more persons (2) for the purpose of depriving a person of the equal protection of the laws, and (3) an act in furtherance of the conspiracy, (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Importantly, § 1983 and § 1985(3) conspiracy claims are not actionable without an underlying constitutional violation. *See Young II*, 2025 WL 888430 (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (§ 1983); *Young v. City of Irving*, No. 3:23-CV-1423-D, 2024 WL 4193936, at *11 (N.D. Tex. Sept. 12, 2024) (Fitzwater, J) (*Young I*) (citing *Calhoun v. Villa*, 2017 WL 3701971, at *4 (S.D. Tex. Aug. 7, 2017) (recognizing that § 1985 conspiracy claims require, as a predicate, a violation of federal constitutional right.) *rec. adopted*, 2017 WL 3670028 (S.D. Tex. Aug. 24, 2017), *aff'd*, 761 Fed. Appx. 297 (5th Cir. 2019) (per curiam).

As discussed above, the individual defendants are entitled to qualified immunity with respect to each constitutional violation. Plaintiff's failure to overcome the individual defendants' qualified immunity as to the underlying constitutional claims is fatal to his conspiracy claims based on those constitutional violations. *See Young I*, 2024 WL 4193936 (citing *Cervantez v. Love*, 2024 W: 2967336, at *17 (N.D. Tex. June 12, 2024) (Hendrix, J.)). Accordingly, Plaintiff's § 1983 and § 1985(3) conspiracy claims should be dismissed. *See id.*

Additionally, as the individual defendants argue, public employees, such as themselves, cannot conspire among themselves for purposes of a § 1983 or §1985(3) conspiracy claim. *Id.; see also Young II*, 2025 WL 888430, at *11

78

(collecting cases). Plaintiff argues that the doctrine does not apply when "employees act outside the bound of official policy and with a shared retaliatory motive." *See* Resp. 24. But Plaintiff cites no authority for this proposition and points to nothing in the record establishing that the individual defendants acted "outside the bounds of official policy and with a shared retaliatory motive." Accordingly, even if the Court finds that Plaintiff has overcome qualified immunity or sufficiently pleaded a constitutional violation, he has failed to plausibly allege any conspiracy under § 1983 or § 1985(3).

XIV. **Defendants are entitled to dismissal of Plaintiff's failure-to-train or supervise claim (Count XVII).**

DeSoto ISD moves to dismiss Plaintiff's supervisory liability claim under Rule 12(b)(6). As discussed, DeSoto ISD is a local government unit or municipality subject to liability under § 1983. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *See Waters v. City of Hearne, Tex.*, 629 F. App'x 606, 610 (5th Cir. 2015) (unpublished) (quoting *Connick v. Thompson*, 563 U.S. 51 (2011)). "For liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Id.* (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "In a failure to train or failure to supervise case, the plaintiff must also show that: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of

plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Id.* (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

Plaintiff asserts that DeSoto ISD has "failed to adequately train or supervise its [employees]" in several areas. *See* Am. Compl. ¶ 598. But Plaintiff has failed to "allege with specificity" *how* DeSoto ISD's "training program is defective." *See Waters*, 629 F. App'x at 610. Additionally, his allegations related to the three *Goodman* prongs are conclusory and devoid of factual support. Plaintiff has therefore failed to plausibly allege DeSoto's culpability for a failure to train or supervise. Because Plaintiff failed to allege a constitutional violation, DeSoto ISD cannot be liable under *Monell*. *Pipkins* F.4th at 360 (no *Monell* liability without a predicate constitutional violation).

## XV.   **Defendants are entitled to dismissal of Plaintiff's failure-to-intervene claim (Count XVIII).**

Plaintiff alleges that "a government official may be held liable under § 1983 for failing to intervene in the constitutional violations of others." Am. Compl. ¶ 612, 613 (ECF No. 13). More specifically, Plaintiff alleges that Defendants Rogers, Campbell, Darden, Morrow, Bailey, Murphy-Goss, Medina, and Polk, are liable under § 1983 for failing to intervene in the unlawful treatment of Plaintiff. Defendants move to dismiss this claim, arguing that bystander liability under § 1983 applies only in the law enforcement context, and, even then, in only very narrow circumstances. *See* Indiv. Mot. Dismiss 23–24 (ECF No. 26).

Plaintiff cites two Fifth Circuit cases, *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) and *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013), in support of his position that school officials may be liable for failing to intervene. But *Whitley* and *Hale* hold that a *police officer* may have a duty to intervene when a person's constitutional rights are being violated by *another police officer*. *See Hale*, 45 F.3d at 919; *Whitley*, 726 F.3d 631. And, as recently as last year, the Fifth Circuit recognized that bystander liability (and its related failure-to-intervene theory) "has not been extended beyond the law enforcement context." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 447 (5th Cir.), *cert. denied*, 146 S. Ct. 329 (2025) (citing *Diaz v. Cantu*, 123 F.4th 736, 750 (5th Cir. 2024)). Plaintiff identifies no authority suggesting that school officials may be liable as bystanders or that the individual defendants had a duty to intervene. *See id.* Because Plaintiff has not established that his bystander liability claims are based on a "clearly established law," the individual defendants are entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

## XVI.  **Leave to Amend**

In his Response to Defendants' Motions, Plaintiff requests "leave to amend under Rule 15(a)" for "any claim" the Court determines "is insufficiently pleaded." *See* Resp. 34 (ECF No. 31). Although a formal motion is not always required, a party seeking leave to amend must provide "some specificity" as to the substance of the proposed amendment. *See Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590–91 (5th Cir. 2016). Here, Plaintiff provides no information regarding the

nature of the proposed amendment, allegations he would add, or changes to be made. *See* Resp. 34 (ECF No. 31). Plaintiff merely "tack[s] on a generative curative amendment request" in response to the Defendants' Motions to Dismiss, which is insufficient. *See id.; see Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003).

While the general rule is that Courts should provide a pro se plaintiff leave to amend his complaint before dismissal, *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam), leave to amend is not required where claims are dismissed without prejudice. *See Bazrowx v. Scott*, 136 F.3d 1053, 1054–55 (5th Cir. 1998) (per curiam); *see also Evans v. Dillard Univ.*, No. CV 15-6841, 2016 WL 4208548, at *2 n. 3 (E.D. La. Aug. 10, 2016), *aff'd on other grounds*, 672 Fed. Appx. 505 (5th Cir. 2017). And even where claims are dismissed with prejudice, leave may be denied "if the plaintiff has already pleaded his best case," *Brewster*, 587 F.3d at 767–68, or if such amendment would be "futile." *See Mandujano v. City of Pharr, Texas*, 786 F. App'x 434, 438 (5th Cir. 2019); *Bernegger v. Dep't of Revenue*, 785 F. App'x 209, 211 n.1 (5th Cir. 2019).

Here, any amendment would be futile with respect to claims barred by qualified immunity. *See Winegarner v. City of Irving Tex.*, No. 3:24-CV-02171-K-BT, 2025 WL 2608241, at *12 (N.D. Tex. Aug. 20, 2025) (Rutherford, J.), *rec. adopted*, No. 3:24-CV-02171-K-BT, 2025 WL 2606991 (N.D. Tex. Sept. 8, 2025) (Kinkeade, J.) (citing *Malloy v. Municipality of City of Com., Tex.*, 2023 WL 10352172, at *6 (E.D. Tex. July 14, 2023) (finding leave to amend futile when

plaintiff did not meet his burden to overcome defendants' assertion of qualified immunity), *rec. adopted*, 2024 WL 1020565 (E.D. Tex. Mar. 8, 2024)). And Plaintiff is not entitled to leave to amend claims subject to dismissal without prejudice. *See Bazrowx*, 136 F.3d at 1054–55.

Furthermore, the District Judge should deny leave to amend because Plaintiff has already pleaded his best case. Plaintiff previously amended his complaint in response to Defendants' first Motions to Dismiss. *See* ECF Nos. 10, 11, 13. And the Amended Complaint consists of 354 pages of allegations and exhibits, containing roughly double the number of allegations asserted in the original pleading. *Compare* Original Compl. (ECF No. 3); *with* Am. Compl. (ECF No. 13). There is no reason to believe that additional facts would salvage any of Plaintiff's claims.

## RECOMMENDATION

The District Judge should **GRANT** Defendants' Motions to Dismiss (ECF Nos. 26, 27).

**SO RECOMMENDED**.

March 11, 2026.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

83

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).